Walter R. Hart, J.
This is an application by petitioners to vacate and set aside the determination, findings and decision of the Commission on Human Bights of the City of New York (hereinafter referred to as the Commission) made after a hearing on the complaint of one Phyllis Hilliard to the effect that petitioners had refused to rent her an apartment in their apartment house because of her being of the Negro race, in violation of section Bl-7.0 of the Administrative Code of the City of New York. The respondent cross-moves to enforce the order made by the Commission.
The facts in connection with this proceeding as established by the evidence at the hearing are as follows: The complainant Miss Hilliard observed an advertisement in the New York Daily News on June 23, 1966 for a four-room apartment at 2406 New-kirk Avenue, Brooklyn, N. Y., for rent at $85 per month. She visited the premises and was shown apartment B-2 by the superintendent’s daughter. Shortly thereafter petitioner Celia Feigenblum came to the building and spoke to complainant and inquired about her financial condition and marital status. Complainant informed petitioner that she was a single girl gainfully employed. Later that evening the complainant called the petitioner and was informed by her that she would not rent the apartment to a single girl and wanted a family.
On June 30,1966 complainant saw the same apartment advertised for $79 a month. She telephoned petitioner Celia Feigenblum and advised her that her godmother was planning to live with her and petitioner again refused to rent her the apartment, stating she wanted a family.
On the same day Mrs. Louise Schaefer, a white volunteer worker and checker for Open City, an anti-discrimination organization, visited the premises and contacted Mrs. Feigenblum to negotiate for the apartment. She told petitioner that she was single and that her mother would live with her. Petitioner then agreed to rent the apartment to her for $79 a month and accepted a $20 deposit. On the following day Mrs. Schaefer brought the balance of the one month’s rent and security and gave it to the superintendent. Mrs. Schaefer conveyed this information to Miss Hilliard and a complaint was filed at the Commission on July 1, 1966 by Miss Hilliard.
On July 5, 1966 Mr. Cubas of the Commission informed Mrs. Feigenblum of the pendency of the complaint. Within a few *362 hours after this information had been relayed to her, one Joseph Ugowitz visited the petitioners’ store and entered into a lease for the apartment in question with Mr. Feigenblum at a rental of $106.32 per month. However, according to his sworn statement dated August 19, 1966 Mr. Ugowitz had placed a deposit of $20 on the apartment with Mr. Feigenblum on June 19, 1966 and on June 22, 1966 paid an additional $86.32 to Mr. Feigenblum and signed a lease and report of lease for the Rent Administration with both petitioners present. Mr. Ugowitz at the hearing stated he rented the apartment on July 5, 1966 because it was located near the college, with the intention of sharing it with two or three other students from Brooklyn College. He planned to be married in another six months and wanted the apartment for himself and his future wife who was presently on a trip to Israel. He stated he was 19 years old and was still residing with his parents at 48th Street, Brooklyn, N. Y. He further stated he was employed at part-time jobs and also worked for the petitioners at their bakery for three or four days.
The Commission considered the evidence presented by the petitioners with reference to the execution of the lease by the young student Ugowitz and was of the opinion that it was not a bona fide agreement and was only entered into in order to obscure the true facts surrounding the allegation of discrimination in this ease. It noted that Mrs. Schaefer and Mr. Ugowitz were white and the complainant was a Negro and that all three were single and each represented he or she intended to reside in the apartment with another individual. The landlord was ready and willing to rent under these circumstances to both of the white applicants- but refused to rent to Miss Hilliard. Hence it concluded that the petitioners’ refusal to rent the apartment to Miss Hilliard was because of her color and constituted a violation of law on human rights of the City of New York (Administrative Code, § Bl-7.0). Accordingly the petitioners were ordered to rent apartment D-2 located at 2406 Newkirk Avenue, Brooklyn, N. Y., to the complainant Phyllis Hilliard at the advertised rent of $85 per month and to cease and desist from discriminating because of race, color, creed or national origin against any person who applied to rent an apartment which they directly or indirectly supervised, managed or controlled.
The pertinent statute is section Bl-9.0 of the Administrative Code, which provides for judicial review of a determination of the City of New York Commission on Human Rights. That section provides in part that the Commission’s findings “ as to *363 the facts shall he conclusive if supported by sufficient evidence ®n the record considered as a whole.” (Cf. Matter of River House in Riverdale Assoc. v. Booth, 51 Misc 2d 403; Matter of Greenthal & Co. v. New York City Comm. on Human Rights, 51 Misc 2d 1038.)
A thorough review of the entire record reveals that there was sufficient evidence to support the factual findings and conclusions of the Commission. Therefore the order predicated thereon should be enforced.
Under section Bl-8.0 (subd. 2, par. c) of the New York City Administrative Code where the Commission finds that one has engaged in any unlawful discriminatory practice, it may take such affirmative action “ as in the judgment of the commission, will effectuate the purposes of this title ”. In the instant case the Commission found that the lease in question was entered into for the purpose of frustrating and rendering ineffectual its action in the performance of its function. This finding was warranted in the light of the evidence adduced herein. Furthermore the testimony of the alleged tenant Ugowitz with respect to the facts surrounding the execution of the lease was contradictory, evasive and unreliable. Consequently under the circumstances herein it would appear that the Commission in order to effectively accomplish the purposes of the statute here involved has the power to set aside a lease entered into to obstruct and impede the Commission in the enforcement of its functions.
The petitioners’ contention that the New York City law on human rights is unconstitutional is untenable. The New York State Legislature has not indicated an intent to pre-empt the field of discrimination in housing. Subdivision 5 of section 296 and sections 297 and 298 of the Executive Law nowhere state or indicate an intent to reserve to the State exclusive jurisdiction over the subject of discrimination in residential housing. On the contrary, section 239-s of the General Municipal Law was enacted to give New York City concurrent jurisdiction with the State Commission for Human Bights. By the enactment of this law, the Legislature conclusively demonstrated its intention not to grant exclusive jurisdiction to the State. Here the local law merely supplements the State Law. It does not prohibit that which the State law permits, nor does it allow that which the State forbids. In this case they are entirely consistent and the conclusion follows that the local law is valid (City of New York v. Claflington Inc., 40 Misc 2d 547). Moreover the creation of the State Commission and the conferring upon it of certain powers merely affords an additional forum *364 or avenue for possible redress of actions prohibited by constitutional or statutory law (Gaynor v. Rockefeller, 21 A D 2d 92, affd. 15 N Y 2d 120).
Accordingly the petitioners’ application is denied and the cross motion of the respondent is granted.