Rosalyn COLON et al., Plaintiffs,

v.

TOMPKINS SQUARE NEIGHBORS, INC., et al., Defendants.

No. 68 Civ. 1401.

United States District Court
S. D. New York.

April 26, 1968.

Opinion on Reargument June 26, 1968.

Harold J. Rothwax, New York City, Nancy E. LeBlanc, Michael B. Rosen, New York City, of counsel, for plaintiff.

Szold, Brandwen, Meyers & Altman, New York City, Daniel M. Sandomire, Joseph Z. Epstein, New York City, of counsel, for defendant.

## MEMORANDUM

TENNEY, District Judge.

Plaintiffs move this Court pursuant to Rule 34 of the Federal Rules of Civil Procedure for an order permitting the commencement of discovery proceedings prior to the expiration of twenty (20) days from the filing date of the complaint herein.

Plaintiffs, members of a class composed of Negro and Puerto Rican Welfare recipients, all of whom allege that they are presently occupants of substandard or inadequate housing, are applicants for admission to Haven Plaza, a middle-income housing project located on Avenue C between 12th and 13th Streets in the Borough of Manhattan, City of New York, consisting of 371 apartment units.

Defendant Tompkins Square Neighbors, Inc. (referred to hereinafter as "Defendant"), a redevelopment company organized under Article V of the New York Private Housing Finance Law, McKinney's Consol.Laws, c. 44–B, is a non-profit organization which owns and operates Haven Plaza. The corporate stock therein is owned by 6 churches and church-related organizations of that neighborhood.

Initially, the housing company purchased the project site from the City of New York, the site being part of an area designated for urban renewal by the City, State and Federal governments. The development of this project allowed the company certain tax exemptions from the City as well as financial assistance in assuming the burden of the land purchase and construction costs in the form of an FHA-insured mortgage under Section 221(d) (3) of the National Housing Act, 12 U.S.C. § 1715*l*(d) (3).

The instant complaint seeks a declaratory judgment declaring unconstitutional and illegal, and for an injunction enjoining, certain policies and practices of defendant in its procedures for the selection of applicants for admission to the project. Specifically, plaintiffs allege that: (1) Defendant has violated the Equal Protection Clause of the Fourteenth Amendment in that its admission policy is structured on a quota system based on race and on applicants' status

as Welfare recipients; and (2) Defendant has violated the Due Process Clause of the Fourteenth Amendment by virtue of its failure to publish a list of objective standards which defendant uses as a guideline for determining tenancy eligibility.

Plaintiff moved on April 10, 1968, before Judge Tyler of this court, for a temporary injunction enjoining defendant from renting any of the remaining apartments until such time as the issues in the within action are determined on the merits, so as to reserve the present vacancies for plaintiffs herein in the event that they prevail in the outcome of the instant litigation. Judge Tyler, assuming *arguendo* the jurisdiction of this court, denied plaintiffs' motion on the grounds that insufficient evidence was presented upon which the relief sought could be justified at that time.

In an effort to obtain sufficient evidence upon which a temporary injunction could be granted, plaintiffs, on April 18, 1968, brought on the within motion before this Court, specifically requesting an order providing for inspection and copying of:

1. All applications and requests for applications to Haven Plaza apartments.

2. All rules, regulations, directives, memoranda, letters, and correspondence relating to policies and procedures for the processing of applications and the determination of eligibility for admission.

3. All books, records, or other documents relating to the taking of applications, acceptance of applications and rejection of applications.

4. All correspondence between the defendant Tompkins Square Neighbors, Inc., its agents, servants, employees, and attorneys, and the defendant JASON R. NATHAN, the City Agency, its agents, servants, and employees, relating to eligibility standards governing the admission of applicants and the processing of applications for Haven Plaza apartments.

Defendant opposes this motion for discovery and inspection on the grounds that the information sought is highly confidential, and to subject this material to public exposure would destroy that element of candor necessary to a proper and effective system of selection. (Dano Affidavit, p. 2.)

Although it is the opinion of this Court that many of the documents sought to be discovered do not fall within the scope of confidentiality, nevertheless, I am constrained to deny the motion purely on the ground that plaintiffs are pursuing their cause of action in the wrong forum.

The newly-enacted Civil Rights Act of 1968, Pub.L. 90–284, § 810(d) (April 11, 1968), 82 Stat. 73, clearly states:

"*Provided,* That no such civil action may be brought in any United States district court if the person aggrieved has a judicial remedy under a State or local fair housing law which provides rights and remedies for alleged discriminatory housing practices which are substantially equivalent to the rights and remedies provided in this title."

Ever since July 1, 1950, New York State has prohibited discrimination in its publicly-assisted housing accommodations against any person because of race, color or creed. New York Civil Rights Law, McKinney's Consol.Laws, c. 6, § 18–c. That section specifically provides:

"It shall be unlawful:

1. For the owner of any publicly assisted housing accommodation to refuse to rent or lease or otherwise to deny to or to withhold from any person or group of persons such housing accommodation because of the race, color, religion, national origin or ancestry of such person or persons."

Further, Section 18–d of that statute provides in pertinent part that:

"1. Any person aggrieved by a violation of section eighteen-c of this chapter * * * shall have a right of action in any court of appropriate ju-

risdiction for restraint of such violation and for other equitable remedies including such affirmative relief as may be necessary to undo the effects of such violation.

2. Any person aggrieved by a violation of section eighteen-c of this chapter shall in addition have a right of action in any court of appropriate jurisdiction for damages caused by such violation."

 Thus, it is clear that the law of the State of New York prohibiting discrimination in housing and providing redress of grievances thereunder is as broad as, if not in some respects broader than, the 1968 Federal legislation. Although plaintiffs argue, however, that the instant action was brought in this court prior to the enactment, on April 11, 1968, of the new Civil Rights Act, it remains the opinion of this Court that even under 42 U.S.C. § 1983, in the exercise of its judicial discretion, jurisdiction of the instant action should be declined.

The United States Supreme Court in Monroe v. Pape, 365 U.S. 167, 173-174, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), set out, as follows, the purposes for which 42 U.S.C. § 1983 was enacted: (1) To prohibit invidious legislation by states against the rights or privileges of citizens of the United States; (2) To provide a remedy where state law is inadequate; and (3) To provide a Federal remedy where the state remedy, though adequate in theory, is not available in practice. Although the Court stated that "[t]he federal remedy is supplementary to the state remedy, and that the latter need not be first sought *and refused* before the federal one is invoked" (emphasis added), Monroe v. Pape, supra at 183, 81 S.Ct. at 482, the Court never intended to provide alter-

nate forums, the choice of which depended solely on the whim of the plaintiff with total disregard for the adequacy of state mechanisms. Clearly, in *Monroe,* to pursue the state remedy would have been nothing more than a study in futility. Similarly, in McNeese v. Board of Education, etc., 373 U.S. 668, 674-675, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), the Court stated that it was "by no means clear that Illinois law provides petitioners with an administrative remedy sufficiently adequate to preclude prior resort to a federal court for protection of their federal rights." The Court, in *McNeese,* describing the provision of the Illinois School Code, which provides for grievances for persons alleging discriminatory practices in the public schools, expressed its opinion that the provision was so loose on its face that "[i]t would be anomalous to conclude that such a remedy forecloses suit in the federal courts * * *." Id. at 675, 83 S.Ct. at 1437. This is clearly not the situation in the action before this Court.

The State of New York, almost two decades ago, enacted legislation for the prevention of discrimination in the area of publicly-assisted housing accommodations which is as progressive as any legislation, both state or federal, enacted to date. In view of this fact and in view of the specific wording of the Civil Rights Act of 1968, which provides that the federal district courts should not entertain a suit thereunder where the person aggrieved has as effective a judicial remedy under the state or local fair housing laws, it is the decision of this Court, in the exercise of its judicial discretion, to abstain from assuming jurisdiction in this case.[1]

After due consideration, and for the reasons set forth above, plaintiffs' mo-

---

1. Although plaintiffs argue that the law of the State of New York does not specifically prohibit discrimination against "Welfare recipients" in obtaining public housing accommodations, it is clear that New York State is equipped with an effective administrative agency before which grievances of this nature should be presented. An Article 78 proceeding in the state courts is always available to any aggrieved individuals who believe that the determination of such agency was arbitrary or delay in determination unjustified.

tion is denied and the complaint dismissed.

So ordered.

### OPINION ON REARGUMENT

Plaintiffs herein move for reargument of a decision of this Court which denied a motion by plaintiffs pursuant to Rule 34 of the Federal Rules of Civil Procedure for an order permitting the commencement of discovery proceedings prior to the expiration of twenty (20) days from the filing of the complaint, and which dismissed the complaint herein in its entirety, thereby relegating plaintiffs to the remedies available to them in the state courts. Inasmuch as the original memorandum-opinion of this Court sets forth in detail the facts pertinent to the matter presently under consideration, it would be redundant to restate them at this time.

Briefly, the complaint consists of three separate claims:

1. Defendant has violated the Equal Protection Clause of the Fourteenth Amendment by virtue of its arbitrary rejection of certain applicants for admission in furtherance of its admission policy which is structured on a quota system based on race.

2. Defendant has violated the Equal Protection Clause of the Fourteenth Amendment by virtue of its arbitrary rejection of certain applicants for admission in furtherance of its admission policy which is structured on a quota system based on individuals' status as welfare recipients.

3. Defendant has violated the Due Process Clause of the Fourteenth Amendment by virtue of its failure to publish a list of objective standards which it uses as a guideline for determining tenant eligibility.

On reargument, plaintiffs contend that it was an abuse of this Court's discretion to apply the doctrine of abstention to the three claims set forth herein. Specifically, with regard to the claim of discrimination against welfare recipients and to the claim based on defendant's failure to publish guidelines relating to tenant eligibility, plaintiffs argue that the application of the abstention doctrine is improper in that neither claim involves an interpretation of state law or the disruption of state-wide administration involving a complex regulatory scheme over a business or industry, citing Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). It is argued that not only is there no administrative proceeding in the state in which a determination of these claims can be had, but, in addition, procedure under Article 78 of the New York Civil Practice Law and Rules is rendered ineffectual by virtue of this absence of administrative coverage. Further, plaintiffs contend that there is a clear reluctance on the part of the courts to recognize the doctrine of abstention in cases involving claims which fall within the sacred confines of the civil rights statutes.

With reference to plaintiffs' claim of systematic and arbitrary exclusion of applicants for admission based on race, plaintiffs argue that both the injury suffered herein and the commencement of this lawsuit are events which predate the enactment of the Civil Rights Act of 1968, Pub.L. 90–284, § 810(d) (April 11, 1968), which legislation should not be applied retroactively. Plaintiffs further allege that if the Civil Rights Act of 1968 were to be applied in this case it would have to be applied in full, which application would leave plaintiffs without a remedy in the state forum by reason of plaintiffs' failure, pursuant to Section 810(b), to file a complaint with the Secretary within one hundred and eighty (180) days of the alleged discriminatory housing practice.

Finally, it is argued that it is contrary to the basic spirit and purpose of the Federal Rules of Civil Procedure for this Court to allow the adjudication of those claims for which there exists no available state remedy and, at the same time, dismiss a claim based on identical facts and transactions. This, it is argued, produces fragmentation of a

cause of action as well as unreasonable and prejudicial delay in the adjudication of a civil rights violation pursuant to the Fourteenth Amendment to the Constitution.

■ It serves no purpose to enter into an extended discussion of whether the three claims herein state a cause of action in the federal courts since it remains a principle of law that underlying the application of the doctrine of abstention is the implied conclusion that the court has jurisdiction to hear the claims presented. Burford v. Sun Oil Co., 319 U.S. 315, 317–318, 63 S.Ct. 1098, 87 L. Ed. 1424 (1943); Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Powell v. Workmen's Compensation Bd. of State of New York, 327 F.2d 131, 135 (2d Cir.1964); Lerner v. Town of Islip, 272 F.Supp. 664, 666 (E.D.N.Y.1967).

Since the time that the original decision was rendered in this matter, it has been brought to this Court's attention that an act seeking to amend the New York State Executive Law, McKinney's Consol.Laws, c. 18, to include a prohibition against discrimination in the renting of housing accommodations to individuals receiving public assistance failed to pass in the State Legislature. New York Legis. Record & Index, Assembly Intro. 7076, at A670, Senate Intro. 5799, at S550, Jan. 3, 1968—May 24, 1968.[1] From this legislative action alone, it appears that New York State does not provide a remedy for discrimination against welfare recipients in the area of public housing. In addition, in the case of Holmes v. New York City Housing Authority, 66 Civ. 2897, S.D.N.Y., Oct. 20, 1967, appeal pending, 2d Cir.,* in which plaintiffs set forth a series of practices by the Housing Authority alleged to be discriminatory as to the low income applicants to the project, one such practice being identical to a claim in the case at bar, that is, failure on the part of the Authority to publish or post regulations concerning the admission procedures and standards for tenant eligibility, Judge Murphy entered an order denying defendant's motion to dismiss on the grounds of failure to state a cause of action under the Civil Rights Act and for application of the doctrine of abstention, citing McNeese v. Board of Educ. etc., 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963) and Randell v. Newark Housing Authority, 384 F.2d 151 (3rd Cir.1967). The appeal from that decision is presently pending.

■ In light of these recent developments, it is the opinion of this Court that the prior decision herein with regard to the claims based on discrimination against welfare recipients and failure to publish a list of objective standards for the admission of applicants can no longer be adhered to.

With regard to plaintiffs' claim of discrimination based on race, this Court has been well aware of the tendency of the courts to refuse to apply the doctrine of abstention in the area of civil rights. Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); Zwickler v. Koota, supra; McNeese v. Board of Educ., supra. However, as this Court pointed out in its original decision, the Congress, in Section 810(d) of the 1968 Civil Rights Act, clearly expressed its intent that any

---

1. The text of the proposed amendment reads as follows:

"(f) It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee or managing agent of, or other person having the right to rent or lease a housing accommodation constructed or to be constructed, or any agent or employee thereof, to refuse to rent, lease, or sublease such housing accommodation to any individual or to discriminate against any individual in the terms, conditions, and privileges of such rental, lease or sublease solely because such individual is receiving public assistance and care. Nothing contained in this subsection shall prohibit the use of a bona fide requirement that all tenants, lessees or sub-lessees have a stated minimum income."

* Decided July 18, 1968. 398 F.2d 262.

person who claims to have been injured as a result of an alleged discriminatory housing practice must, as a prerequisite to the commencement of a suit in any United States district court, pursue his remedy in the state forum, assuming such a remedy is available and is substantially equivalent to the rights and remedies provided by Congress in the 1968 legislation.[2]

Plaintiffs herein have erroneously concluded that this Court has applied the 1968 Civil Rights Act as law to the instant action. On the contrary, this Court has merely noted an expression of present legislative intent in reaching a determination in the exercise of its judicial discretion. This Court would clearly be in error if, in its determination to abstain from exercising its jurisdiction over the race claim, it would be committing plaintiffs to an exercise in futility by ordering the pursuit of an empty remedy or a remedy not available to them by virtue of the relevant statute of limitations. The Civil Rights Act of 1968, however, in no way limits the rights or remedies available to plaintiffs in the state forum as is evidenced by the clear language of Section 815, which provides:

"Nothing in this title shall be construed to invalidate any law of a State or political subdivision of a State, or of any other jurisdiction in which this title shall be effective, that grants, guarantees or protects the same rights as are granted by this title."

Considering, therefore, those state remedies which are available to plaintiffs herein, this Court in its original opinion cited as an avenue New York Civil Rights Law §§ 18–c, 18–d(1), (2). Supplementary to the above provisions, the New York State Human Rights Commission was specifically created to remedy claims of discriminatory practices. New York Executive Law § 293. Pursuant to Section 296 of the Executive Law:

"5. (a) It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, constructed or to be constructed, or any agent or employee thereof:

(1) To refuse to sell, rent, lease or otherwise to deny to or withhold from any person or group of persons such a housing accommodation because of the race, creed, color or national origin of such person or persons."

Any person claiming to be aggrieved by such unlawful discrimination may file a verified complaint with the Commission within one year of the time that the discriminatory practice is alleged to have occurred, the initiation of which activates a remedial procedure consisting of investigation, attempts at administrative persuasion, a hearing on the charges, issuance of administrative orders and, if necessary, the institution of proceedings in the Supreme Court of the State of New York. New York Executive Law § 297(1), (2), (3), (4). Consequently, the New York State Commission for Human Rights, in conjunction with the Supreme Court of the State of New York, has the power to remedy all of the alleged grievances pertaining to

---

2. This clear expression of intent by Congress has in no way been vitiated by the recent opinion of the United States Supreme Court in Jones v. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (U.S. June 17, 1968), in which Mr. Justice Stewart, writing for the majority, reactivated 42 U.S.C. § 1982 as a federal statutory ban against discrimination by private persons in the sale or lease of real property. The Court clearly expressed that "it would be a serious mistake to suppose that § 1982 in any way diminishes the significance of the law recently enacted by Congress." 88 S.Ct. at 2190.

It is the opinion of this Court, after a careful reading of the *Jones* case, that the Supreme Court was merely interpreting a statute and in no way intended to affect the intent of Congress as to enforcement procedures.

racial discrimination. Kindt v. State Comm'n for Human Rights, etc., 23 A. D.2d 809, 258 N.Y.S.2d 250 (4th Dep't), aff'd, 16 N.Y.2d 1001, 265 N.Y.S.2d 662, 212 N.E.2d 898 (Ct.App.1965) (requiring lessor to maintain records, including lists of rejected and accepted applicants and the reasons for such acceptances and rejections); Feigenblum v. Commission on Human Rights, etc., 53 Misc.2d 360, 278 N.Y.S.2d 652 (Sup.Ct.1967) (setting aside a lease entered into for the purpose of obstructing the enforcement of the Commission's functions); Commission on Human Rights of City of New York v. City Builders, Inc., 53 Misc.2d 1, 277 N.Y.S.2d 434 (Sup.Ct. 1967) (award of compensatory damages to aggrieved individual); City Comm'n on Human Rights v. Wurman, 52 Misc. 2d 1095, 277 N.Y.S.2d 310 (Sup.Ct.1967) (issuing a temporary injunction enjoining lessor's further rental of apartments pending a determination by the Commission of the alleged violation); Lawrence Gardens, Inc. v. State Comm'n for Human Rights, 53 Misc.2d 20, 277 N.Y.S.2d 857 (Sup.Ct.1966) (order that the aggrieved individual be offered the next available apartment). In addition, it is clear that inasmuch as the complaint herein alleges that the injurious discrimination occurred in October 1967, state remedies are presently available to plaintiffs and remain available to them for a considerable period of time in the future. New York Executive Law § 297(3).[3]

After due consideration and for the reasons set forth herein, plaintiffs' motion for reargument is granted and, upon reargument, although the passage of time has rendered plaintiffs' original Rule 34 motion moot, plaintiffs' claims regarding discrimination against welfare recipients and defendant's failure to publish its standards for the admission of applicants are reinstated pending a determination by the Court of Appeals in Holmes v. New York City Housing Authority, supra. Because of the uncertainty which exists with regard to these claims, it is the order of this Court that all discovery pertaining to the remaining cause of action be stayed pending that determination. Regarding plaintiffs' claim of discrimination based on race, this Court adheres to its prior decision.

So ordered.

**3.** It should be noted that on June 22, 1968, Governor Rockefeller signed into law a bill, effective July 1, 1968, which creates a Division of Human Rights in the Executive Department to replace the State Commission for Human Rights. This new Division has been established for the purpose of enforcing the state's anti-discrimination laws and granting effective relief to aggrieved individuals prejudiced by racial or ethnic discrimination. Laws of 1968, ch. 958, June 22, 1968.