**Rosalyn COLON et al., Plaintiffs,**

**v.**

**TOMPKINS SQUARE NEIGHBORS, INC., et al., Defendants.**

**No. 68 Civ. 1401.**

United States District Court
S. D. New York.

Sept. 24, 1968.

Harold J. Rothwax, New York City, for plaintiffs; Nancy E. LeBlanc, Michael B. Rosen, New York City, of counsel.

Szold, Brandwen, Meyers & Altman, New York City, for defendants; Daniel M. Sandomire, Joseph Z. Epstein, New York City, of counsel.

J. Lee Rankin, New York City, for co-defendant; Joachim Titolo, Jamaica, and Judah Dick, New York City, of counsel.

## OPINION

TENNEY, District Judge.

This is a motion by defendants for an order dismissing the complaint herein for the following reasons: (1) that plaintiffs, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, have failed to state a claim upon which relief can be granted; (2) that this Court lacks jurisdiction under 42 U.S.C. § 1983; and (3) that primary jurisdiction over the within cause of action lies with the appropriate administrative agencies. In the alternative, defendants seek a declaration pursuant to 28 U.S.C. § 1292(b) permitting their taking of an interlocutory appeal from the determination of the within motion and from the order of this Court dated June 26, 1968.

A brief review of the history of this cause of action from the time the complaint was filed on April 5, 1968, reveals that on April 15, 1968 Judge Tyler of this court denied plaintiffs' motion for a preliminary injunction, suggesting, however, that discovery proceedings be immediately commenced. Plaintiffs thereupon, within 20 days from the date the complaint was filed, brought on a motion pursuant to Rule 34 of the Federal Rules of Civil Procedure for discovery. This Court, *sua sponte*, dismissed the complaint on the grounds that the Civil Rights Act, Pub.L. No. 90–284, § 810(d) (April 11, 1968), required district courts to abstain from exercising jurisdiction in cases involving racial discrimination, where plaintiffs have not exhausted their state remedies, and where such remedies are as broad in scope as those offered by the statute. 289 F.Supp. 104.

On June 26, 1968, this Court granted plaintiffs' motion for reargument and, upon reargument, adhered to its prior order of dismissal with respect to plaintiffs' claim of racial discrimination but reinstated the claims involving discrimination against welfare recipients and defendants' failure to publish a list of standards applicable to tenant eligibility, pending a determination by the Court of Appeals for the Second Circuit in Holmes v. New York City Housing Authority, 398 F.2d 262 (2d Cir., July 18, 1968).

The Court of Appeals in *Holmes*, id., affirmed the order of the district court which denied defendant's motion to dismiss for failure to state a claim upon which relief could be granted. In that case, plaintiffs (all applicants for public housing), pursuant to 42 U.S.C. § 1983 and the Federal Constitution, challenged the procedures employed by the New York City Housing Authority (hereinafter referred to as the "Authority") as regards the admission of tenants to certain low-rent public housing projects managed by the Authority and financed by either Federal, State or local funds. The facts as alleged therein indicate that the regulations regarding admission policies and procedures were not made available to prospective tenants either by publication and distribution or by posting. The applications were processed neither in accordance with "ascertainable standards" nor in keeping with any systematic manner. The Court specifically found that the allegations evidenced that:

"All applications, whether or not considered and acted upon by the Authority, expire automatically at the end of two years. A renewed application is given no credit for time passed, or

precedence over a first application of the same date. There is no waiting list or other device by which an applicant can gauge the progress of his case and the Authority refuses to divulge a candidate's status on request. Many applications are never considered by the Authority. If and when a determination of ineligibility is made (on any ground other than excessive income level), however, the candidate is not informed of the Authority's decision, or of the reasons therefor." Id. 398 F.2d at 264.

The Court held that at least with respect to state-aided projects, where the Authority has failed to adopt "ascertainable standards" for the selection of nonpreference candidates as well as "* * a fair and orderly procedure for allocating its scarce supply of housing * * *", the claim for relief clearly states a cause of action under 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment.

In the present case before this Court, plaintiffs complain not only of the existence of certain of the procedures found to be deficient in *Holmes*, id., but also allege that applicants have been denied admission to the housing project *solely* on the basis of their status as welfare recipients.

Defendants contend, *inter alia*, (1) that no cause of action lies under 42 U.S.C. § 1983 or the Federal Constitution in that the necessary element of "state action" is not present herein, (2) that, in any event, no cause of action exists against defendant Jason R. Nathan, Administrator of the Housing and Development Administration of the City of New York, in that plaintiffs never complained to him of their grievances, and (3) that the proper administration of a housing project requires that the Management be permitted to exercise discretion in the selection of tenants.

Defendants attempt to distinguish the present case from *Holmes* inasmuch as that case involved state-aided public housing supervised directly by the Authority, whereas the instant case involves low-middle income housing which, although financed by an FHA-insured mortgage pursuant to Section 221(d) (3) of the National Housing Act, 12 U.S.C. § 1701 et seq., as well as other forms of City, State and Federal assistance, is directly managed on a day-to-day basis by defendant Tompkins Square Neighbors, Inc. (hereinafter referred to as "Tompkins Square"), a private corporation.

It appears, however, that defendants are attempting a distinction without a difference. The fact that Haven Plaza Apartments has been constructed on a designated urban renewal site, is financed by an FHA-insured mortgage, that the managing corporation, Tompkins Square, is the recipient of certain tax exemptions granted by the City as well as certain rent supplement subsidies and other forms of financial assistance from City, State and Federal authorities (Dano Affid. of April 9, 1968 at 2), and that the daily operations are *ultimately* supervised by both the New York City Housing and Development Administration and the Federal Housing Administration (hereinafter referred to as the "FHA"), pursuant to Tompkins Square's Disposition Agreement with the City of New York and Regulatory Agreement with the FHA (id. at 3), indicates that there exists sufficient and continuing government participation and involvement in the project so as to bring any discriminatory operational practices within the gambit of constitutional prohibition. Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 724, 81 S.Ct. 856, 6 L.Ed.2d 45 (1960); Cooper v. Aaron, 358 U.S. 1, 19, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958); Hawkins v. North Carolina Dental Soc'y, 355 F.2d 718, 722–723 (4th Cir. 1966); Smith v. Holiday Inns, Inc., 336 F.2d 630, 634, 635 (6th Cir. 1964); Ethridge v. Rhodes, 268 F.Supp. 83, 87 (S.D.Ohio 1967). As clearly enunciated in Cooper v. Aaron, supra:

"State support * *. * through any arrangement, management, funds, or

property cannot be squared with the Amendment's command that no State shall deny to any person within its jurisdiction the equal protection of the laws." (Emphasis added.)

■ Defendants' argument that the State does not breach its duty to protect the constitutional rights of its citizens until it fails to act upon specific complaints presented to it is without merit. By virtue of the State's election to put its property, power and prestige behind the housing project, in addition to its failure to affirmatively insure strict adherence to constitutional guarantees, it thereby becomes a party to the alleged discrimination. Burton v. Wilmington Parking Authority, supra, 365 U.S. at 725, 81 S.Ct. 856. Similarly, as evidenced by the cases cited herein, the generalization advanced by defendant Tompkins Square that State aid does not turn private enterprise into public activity is inappropriate as applied to the facts herein.

■ Turning to the complaint, plaintiffs first allege that the refusal to admit applicants as tenants to Haven Plaza *solely* on the grounds that such appliants are recipients of welfare funds constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment. With this, it is incumbent upon this Court to agree.

■ It is established in law that the Equal Protection Clause is only satisfied when classification rests "* * * upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed * * *." McLaughlin v. Florida, 379 U.S. 184, 190, 85 S.Ct. 283, 287, 13 L.Ed.2d 222 (1964).

The purpose of an effective means for the selection of tenants is clearly stated by the Rev. Paul Dano, Director and Chairman of the Renting Committee (Dano Affid. of April 9, 1968 at 8–9):

"If this project is to operate successfully and is to continue successfully over the years, it must have a stable group of tenants who will pay their agreed rentals and continue to pay their rentals, who will live together with minimum turnover, and who will cooperate among themselves and with the management in the maintenance and preservation of the property. Indifferent tenants, inconsiderate neighbors, uncooperative occupants, a high turnover rate—all lead to an unhappy project, inevitably to higher cost of operation * * *."

■■ It is important, therefore, to determine whether the systematic exclusion from the housing project of applicants solely because of their status as welfare recipients is a reasonable classification serving to effectuate the legitimate purposes of the Renting Committee. It appears clear to this Court that a welfare recipient need not be an uncooperative tenant, an indifferent occupant or an inconsiderate neighbor. Regarding the welfare recipients' reliability as to payment of the monthly rent, it would seem that some welfare recipients may have a history of delinquency in their payments whereas others may have been consistently dependable. Naturally, this Court would not require defendants to accept those recipients of welfare funds who would, of necessity, be required to devote an unreasonable portion of their income to the payment of their rent, thereby making non-payment a likelihood. However, where the welfare recipient has been known to be reliable and where his application for tenancy has been approved by the Department of Social Services as being compatible with his support budget, it would be an arbitrary classification in violation of the Equal Protection Clause of the Fourteenth Amendment to reject that applicant, despite whatever personal qualities he may possess, solely on the basis of the applicant's status as a recipient of welfare funds. The day has passed when a citizen's right to participate in publicly-aided, publicly-supervised projects can be irrationally or arbitrarily withheld. Rudder v. United States, 96 U.S.App.D.C. 329, 226 F.2d 51, 53 (1955); Thomas v. Housing Authority,

282 F.Supp. 575, 580–581 (E.D. Ark. 1967); see Holmes v. New York City Housing Authority, supra.

██ It generally follows, therefore, that since the allowance of absolute discretion in a government agency or private corporation acting as an arm of that agency, see Hawkins v. North Carolina Dental Soc'y, supra, in the administration of a publicly-assisted program or project would be an invitation to the arbitrary exercise of power, "ascertainable standards" should be established and published so as to assure that worthy applicants are admitted to the project and unworthy applicants fairly rejected. See Holmes v. New York City Housing Authority, supra. This is not to say that tenants must be selected on the basis of a "point system" or on the theory of "first come, first served". It is unquestionably beneficial to the apartment project as a whole if the element of human judgment and discretion is allowed to remain with the Rental Committee in the administration of its tenant selection procedure so long as that discretion is not permitted to transcend the boundaries established by the Fourteenth Amendment to the Constitution.

██ The "Tenant Selection Policy and Guidelines" submitted to this Court by defendant Tompkins Square is basically sound. However, the document, in its reference to the desirability of a "balanced tenant body", vaguely smacks of a quota system which, in the opinion of this Court, represents a constitutionally impermissible process requiring arbitrary rejection of applicants after a set quota has been met.

██ In order to avoid keeping applicants in a state of indefinite suspension pending a determination of their applications, a reasonable time limit should be agreed upon between the parties herein within which the Rental Committee should be required to complete its investigation of an applicant and notify the applicant as to the results thereof. Due to the steady inflow of applications for low and middle income housing accommodations, the directors of Haven Plaza cannot be expected to process them with the same dispatch as would be anticipated from a private rental agent. Nevertheless, a time limit should be established by the parties herein which, although taking into account the amount of applications which steadily burdens the Rental Committee, primarily caters to the interest of the applicants in a prompt determination of their status and in having adequate time to obtain a review thereof.

██ Finally, a system should be created whereby a chronological waiting list is maintained, thereby affording the applicants an opportunity to gauge the progress of their cases as well as allowing both initial and renewed applications credit for time passed. Holmes v. New York City Housing Authority, id.

Defendants' argument regarding the primary jurisdiction of qualified administrative agencies has been considered in a prior order of this Court, wherein the absence of a state remedy for discrimination against welfare recipients was noted. Colon v. Tompkins Square Neighbors, Inc., 289 F.Supp. 104 (S.D. N.Y., 1968).

Although defendants argue that plaintiffs' inconclusory allegation is too vague to support a cause of action, the Court of Appeals in *Holmes*, supra, clearly enunciated:

"A case brought under the Civil Rights Act should not be dismissed at the pleadings stage unless it appears 'to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.' Barnes v. Merritt, 376 F.2d 8, 11 (5 Cir. 1967). This strict standard is consistent with the general rule. See 2A Moore's, supra at 2245."

██ Accordingly, after due consideration and for the reasons set forth herein, defendants' motion to dismiss is denied. However, due to the fact that certain of the controlling questions of law herein appear to be of first impres-

sion and could reasonably provoke a substantial difference of opinion, this Court, pursuant to Rule 5 of the Federal Rules of Appellate Procedure (eff. July 1, 1968), 28 U.S.C. § 1292(b), permits an interlocutory appeal to be taken on the issues raised by the instant motion, and hereby amends the June 26, 1968 Order of this Court to similarly permit the taking of an interlocutory appeal from the issues disposed of therein.

It is so ordered.