Martha McDOUGAL, individually and as guardian and parent of Shara McDougal, Questeria McDougal, Allan McDougal, all of the foregoing being minors under the age of ten (10) years and on behalf of themselves and all others similarly situated,

v.

A. J. TAMSBERG, Executive Director, Housing Authority of the City of Charleston, John C. Wilson, Chairman, Housing Authority of the City of Charleston, Housing Authority of the City of Charleston, J. Palmer Gaillard, Mayor of the City of Charleston, George Romney, Secretary of Department of Housing, and Urban Development.

Civ. A. No. 69–394.

United States District Court,
D. South Carolina,
Charleston Division.

Jan. 22, 1970.

William L. Runyon, Jr., Charleston, S. C., for plaintiff.

Morris D. Rosen and J. C. Hare, Charleston, S. C., for defendants.

## ORDER

HEMPHILL, District Judge.

By motion filed May 16, 1969[1] plaintiffs (a mother and five children) urge the court to direct immediate acceptance and shelter by defendants pendente lite. Such procedure on plaintiffs' part is supplemental to a complaint, allegedly pitched under 28 U.S.C. §§ 2281 and 2284. The allegations of the complaint precipitate a scattergun demand that the court find, and declare unconstitutional, an alleged policy and practice of defendants of denying public housing to plaintiffs, and others similarly situated[2] because the five children are born out of wedlock; demand is also made that defendants be enjoined from further enforcement of the policy and that costs be taxed against them. Alternate forms of relief prayed for ask that the Secretary of Housing and Urban Development[3] be restrained from disbursement of further loan and/or grants to defendant Housing Authority of the City of Charleston, and that the court assess damages against defendants.

At the hearing the court had before it the entire file, including depositions of plaintiff Martha M. McDougal and

---

1. The motion was not pressed by plaintiffs and hearing was had December 15, 1969.

2. Apparently plaintiffs bring the action as a class action. There is, however, no showing before the court, at this time, that a particular class exists or can be identified as inclusive of plaintiffs.

3. Honorable George Romney, who is not a party to the action and over whom this court has no jurisdiction at this time.

defendant A. J. Tamsberg. At the hearing defendants offered, without objection by plaintiffs, an affidavit of a detective Simmons of the Charleston Police Department [4], to which was attached her police record (petty larceny, 1962, and fighting 1963), an affidavit of defendant Tamsberg, to which was attached (1) a letter from Tamsberg to plaintiff mother (2) a table showing the "number of present tenants admitted [to the housing development] between 1/1/67 and 6/30/69 who identified children as illegitimate on tenant records, and (3) a form showing additional information required of plaintiffs as applicants. Plaintiffs introduced, without objection by defendants, nine pictures portraying plaintiffs' present living quarters. Defendants also introduced the eligibility rules for admission to HAA—aided low-rent projects operated by the authority.[5] In argument all counsel relied heavily on the Tamsberg and McDougal depositions.

Were this court to grant the motion and direct admission of plaintiffs to public housing projects operated and maintained by the Housing Authority, the issues would be merged, the status of the parties changed, and plaintiffs would effectively have the relief prayed for. This court has no desire to preempt a hearing on the merits, if there are merits to plaintiffs' claims, but there is no showing at this time that plaintiffs are entitled to immediate relief because of the alleged policy against illegitimates or tenants with children born out of wedlock. The regulations for eligibility do not reflect such a policy and the statistics attached [6] to Tamsberg's affidavit reveal that, at this stage of the proceedings, plaintiff has no justifiable complaint. (At trial of the main issues more or other testimony may reveal plaintiffs are entitled to relief). The affidavit of Tamsberg, effectively negates plaintiffs' charges as to this motion.

The day has passed when a citizen's right to participate in publicly-aided, publicly-supervised, projects can be irrationally or arbitrarily withheld. Rudder v. United States, 96 U.S.App. D.C. 329, 226 F.2d 51, 53 (1955); Colon

4. That he has been employed by the Charleston City Police Department for eight (8) years, and is presently occupying the position of Detective. That on or about July, 1969, he made an investigation of one Martha McDougal, and from informers learned the following: That Martha McDougal is now married to one Junior Bennett. That Martha McDougal has frequent visits by known prostitutes and servicemen, and on weekends large groups of young people meet in her apartment. That it is believed that she sells wine to some of the young people. She is considered by the neighbors to be an undesirable neighbor.

5. These rules prescribed eligibility for those applicants:
 Who conform to the following:
 Who would not be a detriment to the health, safety, or morals of his neighbors or the community;
 Who would not have an adverse influence upon sound family and community life;
 Who would not be a source of danger to the peaceful occupancy by other residents or cause damage to the premises or property of the Authority;
 Whose previous housing record as a resident in any low-rent housing project was satisfactory.

| 6. Family Composition | Admitted 1967 (12 mos.) | Admitted 1968 (12 mos.) | Admitted 1969 (6 mos.) |
|---|---|---|---|
| Mother and 1 illegitimate | 12 | 21 | 10 |
| Mother and 2 illegitimate | 11 | 16 | 5 |
| Mother and 3 illegitimate | 5 | 10 | 2 |
| Mother and 4 illegitimate | 0 | 5 | 5 |
| Mother and 5 illegitimate | 1 | 6 | 3 |
| Mother and 6 illegitimate | 2 | 4 | 2 |
| Mother and 7 illegitimate | 0 | 0 | 0 |
| Mother and 8 illegitimate | 0 | 1 | 0 |

* There were no "father only" family groups which identified illegitimate children. Two "mother and father" family groups admitted in 1968 identified the only child in the group as being illegitimate.

v. Tompkins Square Neighbors, Inc., 294 F.Supp. 134, 138 (S.D.N.Y.1968). However, "it is unquestionably beneficial to the apartment project as a whole if the element of human judgment and discretion is allowed to remain with the Rental Committee in the administration of its tenant selection procedure so long as that discretion is not permitted to transcend the boundaries established by the Fourteenth Amendment to the Constitution." *Colon,* supra.

 It is equally elementary that low-income families, whether graced by marriage, or blemished by illegitimacy, have no vested right to acceptance, admission into and occupancy in an HAA—aided low-rent project. But a denial of admission cannot be predicated on unconstitutional requirements or regulations/practices that project a denial of equal and constitutional treatment. See Holt v. Richmond Development and Housing Authority, 266 F.Supp. 397 (E.D.Va.1966).

In Thomas v. Housing Authority of City of Little Rock [7], the court had before it two mothers with illegitimate children who had been denied shelter of that city's low-rent housing facilities. The Little Rock Housing Authority discovered that certain of its female tenants were engaging in on-the-premises prostitution and sexual promiscuity to such an extent that other more settled families were unwilling to reside in the project. In an effort to rectify the situation, the Housing Authority promulgated a rule excluding any family which had one or more illegitimate children. Chief Judge Henley phrased the issue before his court as follows:

> [T]he question for decision is whether a local Housing Authority, administering a low-rent public housing program, can validly exclude or evict from occupancy of such housing a family of low income on the sole ground that the head of the family or some member

7. 282 F.Supp. 575 (D.C.Ark.1967).

8. 282 F.Supp. 581 The Housing Authority is not required to tolerate criminal

thereof has an illegitimate child or children.

The court decided the question in the negative.

 At first blush, the *Thomas* case would seem to be authority for the relief prayed for by plaintiff in the case at bar. It is not; the cases are inimical. In *Thomas* the court recognized the right of the Housing Authority to promulgate such rules as are necessary to the proper operation of its facilities. Moreover, the court categorically stated that the Housing Authority was empowered to screen and eliminate applicants whose "illegal or disorderly conduct or conduct amounting to a nuisance may reasonably be anticipated." In short the court recognized that the Housing Authority could properly eliminate serious sexual misconduct within its facilities.[8] The court's holding in *Thomas* was narrow. The fatal flaw the court found in the Housing Authority's rule was its inflexibility; the exclusionary rule did not bear a reasonable relationship to proper objectives of the housing program. It operated arbitrarily to exclude all unwed mothers when there was no showing that this was necessary to achieve proper operation of the facilities. In conclusion the court stated:

> The prohibition of the present policy is absolute. It makes no distinction between the unwed mother with one illegitimate child and the unwed mother with ten of such children; it does not take into account the circumstances of the illegitimate birth or births, the age, knowledge, training or experience of the mother, or the possibility or likelihood of future illegitimate births. It completely overlooks the possibility that the mother has reformed, or that if placed in better surroundings she may lead a more conventional life.

activities within the facilities, or disorderly conduct, or conduct amounting to a nuisance or which seriously violates ordinary standards of decency.

Under the regulation, as written, if the head of a family or any member thereof has an illegitimate child, that family is automatically excluded from admission to the facilities, and if an illegitimate child is born into a family group which has been admitted to the facilities, the fact of the birth is an automatic basis for eviction. In the Court's eyes the present regulation is drastic beyond any reasonable necessity in the context in which it was promulgated.

The policy would stand on better ground if it was capable of insuring that all of the tenants of the facilities would be persons of good conduct. That it is not so capable is too manifest to require discussion. The absence of illegitimate children from a family group does not establish the morality of the members of the group or insure lawful conduct of tenants of the Housing Authority.

█ █ The court went to great lengths to emphasize that its holding was limited to the facts before it:

Before leaving the unwed mother policy, the Court wishes to emphasize that there are certain things which it is not holding.

\* \* \* \* \* \*

Further, in passing upon an application for initial admission to the facilities the Housing Authority is not required to close its eyes to the fact that the head or a member of the family group has one or more illegitimate children. And the Court thinks that the Authority might permissibly formulate a policy giving some evidentiary or presumptive effect to the presence of illegitimate children in a family group, particularly where there are more than one of such children, where they are of recent birth, and where the births have followed each other in quick succession. If, as is the case of these plaintiffs, a woman has had three illegitimate children in a space of three years, the Court thinks that a Housing Authority as a condition for admitting the woman's family to tenancy in one of its facilities certainly may require some assurance that the family will be satisfactory low rent housing tenants notwithstanding the past conduct of the mother.

\* \* \* \* \* \*

All that the Court holds is that such a mother and family may not automatically be excluded or evicted from the facilities merely because of her status as an unwed mother.

Here the Housing Authority did not arbitrarily exclude plaintiff because she had an illegitimate child. In fact, the Housing Authority made a prima facie showing of "conduct amounting to a nuisance or which seriously violates ordinary standards of decency." [9] Without going to the merits of the matter this court holds that a large number of illegitimate children, each by different men, is a factor which may be considered by the Housing Authority in screening applicants for its facilities in order to eliminate those whose conduct might constitute criminal activity, or disorderly conduct, or which might amount to a nuisance or seriously violate ordinary standards of decency. The Authority must, however, constantly demonstrate equality of treatment, so that any regulations or practices pursued are void of discrimination.

The motion for immediate relief is refused without prejudice to plaintiffs to pursue their suit in this forum.

And it is so ordered.

9. See deposition of A. J. Tamsberg and affidavit of Detective Melvin Simmons of the Charleston, S. C., Police Department.