Elsa and Estella MANNERS, and Carlos Kastanon, on behalf of themselves, and all other persons similarly situated, Plaintiffs,

v.

SECRETARY OF HOUSING AND URBAN DEVELOPMENT, Eugene A. Gulledge, et al., Defendants.

No. 71 C 550.

United States District Court, E. D. New York.

Aug. 26, 1971.

**830**

Eugene Prosnitz (Gerard A. Walters, and Ronald G. Yelenik, of counsel), for plaintiffs.

Cyril Hyman, New York City (Robert A. Morse, U. S. Atty., of counsel), for the Secretary.

Peter Deutsch, Brooklyn, N. Y., for Federal Nat. Mortgage Ass'n.

Thorold J. Deyrup, and Edward K. Mosenthal, New York City (Berle & Berle, New York City, of counsel), for Buffalo Savings Bank.

## MEMORANDUM and ORDER

DOOLING, District Judge.

There is no essential dispute of fact on the present motion for an injunction against the eviction of the plaintiff tenants from foreclosed properties the mortgages on which have been insured by the Secretary of Housing and Urban Development under the provisions of 12 U.S.C. § 1709. Plaintiffs contend, and argue on behalf of all other tenants similarly situated, that they cannot be evicted, even though their tenancies were subject to the mortgage and, under ordinary property principles could be terminated in foreclosure, without good cause shown in a proceeding characterized by due process. The two properties here involved, one owned by Federal National Mortgage Association (FNMA) and the other owned by Buffalo Savings Bank (the Bank) are located in the Brownsville-East New York area, and, plaintiffs argue, they are, and the neighborhood in which they are located is peculiarly the object of and eminently in need of exactly the sort of housing assistance instituted by the many and multiform housing assistance, urban redevelopment, slum removal, and property rehabilitation and renovation programs that have been provided by federal, state and city legislation, and that have been the subject of so much public and private endeavor and so many complex integrations of public assistance and private enterprise.

A significant part of the public-law effort in housing has centered on govern-

mental underpinning of traditional mortgage financing of new construction. 12 U.S.C. § 1709 authorizes the Secretary of Housing and Urban Development to insure mortgages on residential properties for occupancy by up to four families. Broadly, the insurance follows the now familiar pattern of a commitment to insure which makes possible the obtaining of the mortgage loan, followed by the Secretary's issuance of a contract of insurance when the terms of the commitment have been satisfied and the mortgage loan has been fully advanced. When a default occurs in such a mortgage arrangement, a usual consequence is the conventional mortgage foreclosure, or other acquisition of the property subject to the mortgage upon default, followed by the determination of the amount of insurance benefit and its liquidation with debentures and/or cash. 12 U.S.C. § 1710 (a) provides that—

"(a) In any case in which the mortgagee * * * shall have foreclosed and taken possession of the mortgaged property in accordance with the regulations of * * * the Secretary, or shall, with the consent of the Secretary, have otherwise acquired such property. * * *"

the mortgagee shall be entitled to receive the benefits of the insurance upon

"(1) the prompt conveyance to the Secretary of title to the property which meets the requirements of rules and regulations of the Secretary in force at the time the mortgage was insured, and which is evidenced in the manner prescribed by such rules and regulations, and (2) the assignment to him of all claims of the mortgagee against the mortgagor or others, arising out of the mortgage transaction or foreclosure proceedings, except such claims as may have been released with the consent of the Secretary * * * *And provided further* That, notwithstanding any requirement contained in this chapter that debentures may be issued only upon acquisition of title and possession by the mortgagee and its subsequent conveyance and transfer to the Secretary, and for the purpose of avoiding unnecessary conveyance expense in connection with payment of insurance benefits under the provisions of this chapter, the Secretary is authorized, subject to such rules and regulations as he may prescribe, to permit the mortgagee to tender to the Secretary a satisfactory conveyance of title and transfer of possession direct from the mortgagor or other appropriate grantor and to pay the insurance benefit to the mortgagee which it would otherwise be entitled to if such conveyance had been made to the mortgagee and from the mortgagee to the Secretary."

A separate subdivision, Section 1710 (g), provides that notwithstanding any other provision of law relating to the government's handling of real property

"the Secretary shall have power to deal with, complete, rent, renovate, modernize, insure, or sell for cash or credit, in his discretion, any properties conveyed to him in exchange for debentures and certificates of claim as provided in this section: * * * *"

After there had been a default and the Bank had, on or before July 24th, 1970, commenced a foreclosure action, the plaintiffs Manners became tenants in the two-family residence at 610 Sheffield Avenue, Brooklyn, New York, of which the Bank was mortgagee and the mortgage on which the Secretary had insured. A Notice of Pendency of the foreclosure action was filed July 24th, 1970, and the plaintiffs Manners, therefore, acquired a possessory interest subject to the mortgage and to any judgment in the action. A judgment of foreclosure and sale was entered on February 16th, 1971. The sale took place on March 23d and on March 30th a referee's deed of sale was made to the Bank. The Bank exhibited its deed to the plaintiffs Manners and demanded possession of them and they refused it. A motion for possession was then made on April 15th, 1971, and an order was, ultimately, made, on notice to the plaintiffs Manners, under date of June 14th, 1971. Execution of the order

was by its own terms stayed until July 26th, 1971, in apparent contemplation of the present action.

Plaintiff Kastanon was apparently a tenant in the two-family residence at 429 Warwick Street, Brooklyn. The bond and mortgage on 429 Warwick Street had been executed by the owners of record Fleitas to United Institutional Servicing Corp. and the Secretary insured the mortgage. The mortgage went into default almost as soon as it was made, but the mortgage had been transferred to FNMA, apparently within a month of its making. FNMA commenced its foreclosure action in April 1970 and filed a Notice of Lis Pendens. Plaintiff Kastanon was served as a "John Doe" tenant-defendant with summons and complaint on October 24th, 1970. Judgment of foreclosure and sale was entered December 23d, 1970, the sale took place on January 29th, 1971, and FNMA became the purchaser in foreclosure receiving the referee's deed on January 29th and recording it on February 9th, 1971. FNMA personally served a ten day notice to vacate on plaintiff Kastanon on February 24th, 1971, and, vacatur not following, a motion for possession was served on plaintiff Kastanon on April 19th, 1971; that motion has been postponed until August 5th, 1971, again in apparent contemplation of the proceedings in the present case.

Plaintiffs essentially contend that their occupancy of the property is in some sort stamped with a public character and is under public supervision, and that, as a consequence, it cannot be terminated by arbitrary fiat, but can be terminated only on some ordered and reasonable scheme which, to the extent that it relates termination to a specified condition of fact, provides for at least minimal due process procedures in the determination of the existence of the termination-precipitating facts. Their reliance naturally is on Thorpe v. Housing Authority of Durham, 1969, 393 U.S. 268, 89 S.Ct. 518, 21 L. Ed.2d 474; Escalera v. New York City Housing Authority, 2d Cir. 1970, 425 F.2d 853; Caulder v. Durham Housing Authority, 4th Cir. 1970, 433 F.2d 998;

Colon v. Tompkins Square Neighbors, Inc., S.D.N.Y.1968, 294 F.Supp. 134; Talbot v. Romney, S.D.N.Y.1970, 321 F. Supp. 458; and McQueen v. Druker, D. Mass.1970, 317 F.Supp. 1122.

There is no doubt that each of the cases cited can be differentiated from the present case. Perhaps they differ most strikingly in that here the "tenant interest" is more tenuous and fragile than in the other cases, and, further, in the evident purpose of the present statutory scheme to make it possible for the Secretary to acquire insured property, in the event of a default foreclosure and a demand for insurance benefit, free and clear of all encumbrances, including tenancies, so that the Secretary can deal effectively with the property either by preparing it for the market and marketing it, rehabilitating it, or otherwise disposing of it in terms of the overall responsibilities of the Secretary in his office and under this and the other Acts under which he has administrative responsibilities. The Act fairly clearly contemplates that the insured mortgagee is to deliver title and possession. But since the Secretary has power to deal fully and freely with the property after it is acquired, and to hold and rent it, it is immediately obvious that situations could exist in which undisturbed tenancies, even in such 2-family houses as are here involved, would be advantageous in the Secretary's administration of the property. Hence, there is here implicit room for exercise of an informed judgment, in the public interest, on the advisability of insisting on vacant possession.

In the narrow perspective of Sections 1709 and 1710 the interest of those who happen to be tenants is not clearly indicated as an interest intended to be benefited by the legislation, even insofar as the legislation may be thought implicitly to authorize the Secretary to take properties subject to tenancies and to create tenancies in them. True, tenants of the class whom plaintiffs wish to represent, that is tenants in a depressed and deteriorating area in Brooklyn, are

broadly in a class manifestly intended to be advantaged by the entire complex of housing legislation and legislation devoted to urban development, renewal, and redevelopment. And it is plain enough that every provision of all of these statutes must be read, and every power and authority expressly or impliedly granted in them interpreted, in light of their over-all purposes of social betterment. Nevertheless, in the particular aspect here relevant of the operations of the particular law directly involved, the dominant interest is the interest of the Secretary in getting control of the property in the most manageable form so as to impose the fewest and slightest obstacles to his effectively dealing with the property in terms of the over-all purposes of the whole body of legislation. Hence, anything that the Secretary did to generalize practices with respect to existing occupancies and tenancies could expectedly and properly be weighed heavily for what might seem like traditional ownership rights in the interest of acquiring the greatest freedom in public management and disposition. It would not here be required that the Secretary's approach to rule making be dominated, as the cases relied upon by plaintiffs are, by recognition of primacy for the tenant interest and its integration in a sound and stable tenant-community structure.

12 U.S.C. § 1715b authorizes and directs the Secretary to make such regulations and rules as may be necessary to carry out the provisions of the subchapter, which includes both Sections 1709 and 1710 of Title 12. The only regulation which has been specifically referred to is 24 C.F.R. § 203.381 which provides

> "Unless otherwise approved by the Commissioner, the mortgagee shall certify that the property is vacant as of the date of the filing for record of the deed to the Commissioner. This section shall not apply to a mortgage assigned to the Commissioner."

A portion of the "Property Disposition Handbook, One to Four Family Properties," Chapter 4 ("Procedures Prior to Acquisition"), contains the following in paragraph 91—

> "*Approval of Occupancy—Individual Acquisition.* The mortgagee must vacate a property or obtain the prior consent of the local office to convey a property subject to agreed occupancy. It is normally preferable to have the mortgagee vacate a property so that it may be programed for repair and exposed to the sales market in the shortest practicable time. *Continued tenant occupancy may be considered* for a property requiring occupancy to prevent vandalism or for an investment property presenting no advantage insofar as immediate occupancy by a purchaser is concerned *or a two to four family dwelling with tenants*" (Emphasis added on last sentence.)

The same paragraph 91 provides that the local-office director may agree to take an assignment of a mortgage or accept an occupied property where eviction by a mortgagee might engender public unrest and tension. But for such action a specific request must be made, and action upon it is "left to the discretion of the local-office director." While due *consideration is to be given to mort-gagee's requests*, they are not to be permitted to abuse the procedure "since it was not designed to allow mortgagees to ignore their obligations or to give them a simplified method of conveying occupied properties to the Department on a routine basis." Paragraph 91 also provides for permitted retention of occupancy in connection with a tenant offer to buy, in certain circumstances. Plaintiffs point out that both of the two-family houses involved in the present foreclosures are in an area in which vandalism is rife and the abandonment and demolition of housing has become notorious.

The question then is whether plaintiffs' interest of occupancy, slender and qualified as it is in the perspective of traditional law and, equally, in that of the statutory scheme, is sufficiently real and sufficiently within the zone of beneficence of the statute as to entitle

plaintiffs to have a principled determination by the Secretary on the issue of eviction or retention in each foreclosure, and to have adequate procedures for assuring that such determinations are within stated and uniform principles of action. The mere existence of the regulation, the existence and language of the handbook with paragraph 91 in it, and the grant of the power to rent "held" properties unite to establish an area of necessary official decision. There is no room for arbitrary action without advertent decision-making if choices are to be made between acquiring property with an insistence upon vacancy and acquiring property with the tenants in possession in continued occupancy, since any such action is an act of government and impinges on individual interests. Such individual interests would certainly be protected against discriminatory treatment. *Cf.* Colon v. Tompkins Square Neighbors, Inc., *supra*. The more difficult question, and that presented here, is whether the plaintiffs interest of occupancy, purely as such, as a quasi-property interest, is entitled to exact recognition that it should be permitted to continue in the absence of good cause shown (*cf.* Escalera v. New York City Housing Authority, *supra*), or is at least legally cognizable to the extent that in every instance in which the Secretary or his delegate determines that the property need not be conveyed in vacant condition, the occupants lawfully in possession of portions of the premises are not evicted unless the Secretary or his delegate advertently determines, by appropriate procedure, that continued occupancy by one or more specific tenants is not compatible with the interests of the Housing Administration. It does not, however, appear that the interest of occupancy is such as to require the Secretary or his delegate in every instance to make a reviewable decision in a specifically adversary proceeding that a conveyance of the property in vacant condition will be insisted upon or will be waived; the interest in continued occupancy is not insubstantial, but, weighed against the importance to the Administration of

having the greatest freedom in the disposition of what are essentially salvage properties, it cannot be used to fetter effective administration of the Acts and the Administration's funds. Plaintiffs, and persons in their position, would not appear to have an interest justifying anything other than a right to have the Secretary or his delegate advert to and decide the vacant or tenanted issue, whenever that issue is appropriately raised, and to make a record of the decision made and the reasons supporting it. If the determination of the Secretary or his delegate is that occupancy is a desideratum, but that particular tenants then in possession are unacceptable and their eviction is sought so that they can be replaced by other tenants, then the case is not different from *Thorpe, Escalera*, and *Caulder*.

In the present case there is no indication that the tenants, either directly or through the mortgagees sought approval of a transfer subject to tenancies or advanced in a specific context and with specific support the proposition that Chapter 4, paragraph 91 of the Property Disposition Handbook should be applied in plaintiffs' instances and in their neighborhood to authorize and warrant an exception from the usual procedure. It is not clear that any procedural path of ready access—and not administratively unendurable—exists or can hurriedly be devised for plaintiff's exigency. But the existence of officially contemplated exceptions to the general rule of vacant delivery requires that a procedure be established for bringing the issue to the point of articulated decision and to assure the exposure of any issue of choice among tenants which would require turning to the probably more elaborated due process procedure contemplated by *Escalera* and *Caulder*.

■ It follows that in the present case to grant injunctions against the defendants' farther pursuit of the remedies now being pursued in the state court would not be proper. There is some information, although very uncertain and to an extent contradicted, that mortgagees

generally would not insist on vacant delivery in their own interest, but the importance of keeping mortgage foreclosure costs at a minimum counsels against complicating them by adding an administrative procedure collateral to this issue. On the other hand, the necessity of getting possession orders, which in the present instances have required separate motions, also presents a problem in cost and in delay, but possibly one which is not frequent in its occurrence in the case 1 to 4-family houses. For the present, an improvised procedure for obtaining an administrative decision in these two cases from the Secretary or his delegate concerning the matter of insistence upon or waiver of vacant delivery is all, probably, that is practicable. If in the irreviewable discretion of the Secretary or his delegate vacant delivery is for stated reasons required and it is not contemplated that the property will be held and tenanted rather than renovated or resold vacant, etc., the matter will be at an end so far as judicial review is concerned. If, however, in the instance of either or both buildings tenancy is in contemplation, but it is not intended to accord the right of tenancy to either plaintiff but rather to terminate their tenancy in favor of new occupants, then due process procedures visualized in *Thorpe, Escalera* and *Caulder* are required. The termination of any tenancy imposes costs and inconveniences upon the tenant for removal and relocation which are not inconsiderable, and such costs and inconveniences cannot be imposed by arbitrary official action except for a substantial and relevant reason which it is proper for a public agency to act upon.

██ Plaintiffs have moved to add the Secretary of Housing and Urban Development as a party defendant. Since it is the Secretary's regulations and his actions under them which are critical in the case, he is a proper party and should be added. While it is not essential at this stage to pass on the question whether the case is properly in this Court as to all parties and theories of action, it may be noted that plaintiffs, ultimately, challenge the validity of agency action, and, also, complain of the Bank's and FNMA's invoking the color of state court rights to deprive plaintiffs of asserted Federal due process rights exercisable in the course of Federal Agency proceedings. See *Escalera, supra,* 425 F.2d at 864–865; *McQueen, supra,* 317 F.Supp. at 1132–1133; (*cf.* Goldberg v. Kelly, 1970, 397 U.S. 254, 261–262, 90 S.Ct. 1011, 25 L.Ed. 2d 287; Shelley v. Kraemer, 1948, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161. While FNMA is federally incorporated and enacts a significant role in the financing of housing, including insured-mortgage housing, that status does not appear in this case to be jurisdictionally significant. Where, as in the Housing Authority cases, it is at times difficult to determine the exact point of federal interest and responsibility, it is plain enough here, for the Government itself is here the contemplated owner of the properties involved, and it is the standards of federal action that are under review.

It is, accordingly,

Ordered that the motion of the plaintiffs for a temporary injunction is denied, and the motion of the plaintiffs to add the Secretary of Housing and Urban Development as an additional party defendant is granted, and the title of the action is accordingly amended to reflect that addition.