Behtuey Kassal, J.
This is a holdover summary proceeding for possession of an apartment located in Haven Plaza, a middle-income housing project sponsored by Tompkins Square Neighbors, Inc., a redevelopment company organized under article V of the Private Housing Finance Law (Redevelopment Companies Law). The tenants entered into possession about 14 years ago and there has been a succession of annual lease renewals until this year. The last lease expired on September 30, 1971 and the landlord has not renewed the lease because of numerous complaints against the tenants’ son.
The tenants have moved to dismiss the petition on the ground that their rights under the Fourteenth Amendment to the United States Constitution were violated: ‘ ‘ Since the landlord is a government aided and a government regulated project, the landlord cannot deprive (tenants) of (their) right to continue to occupy the apartment herein without due process, i.e., written charges and a hearing. ” It is conceded that if this landlord be adjudged a “ private ” landlord and there is no lease, it may terminate the tenancy at its will. (Metropolitan Life Ins. Co. v. Carroll, 43 Misc 2d 639.)
The issue is simple: Does a tenant in a “ private ” redevelopment housing project have the same constitutional rights as a tenant in a public housing project so that he must receive notice of the reasons why his tenancy is being terminated as well as a fair hearing, before an eviction order is issued by this court?
It is essential, therefore, to analyze the organization of a redevelopment company. Although it is a privately owned housing project, section 101 of the Redevelopment Companies Law prescribes the “policy of state and purpose of act” as being for “ public uses and purposes ” and “ in the public interest ’ ’. The company is under the supervision of the Housing and Development Administration of the City of New York, which has extensive, almost absolute power, including the removal of any or all directors and the appointment of new managers. Its capital is minimal and there is a limited return of investment. Property may be taken for it by condemnation and it has special tax exemptions. The mortgage is insured by the Federal Housing Authority which also prescribes regulations. The premises, like public housing, are not subject to “ rent control ” or “ rent stabilization ’ ’ by virtue of their special governmental regulation. Clearly, it possesses more attributes of “public” housing than “ private ” housing.
*105 The same conclusion was reached by Judge Tenney of the United States District Court in a case involving this very landlord (Colon v. Tompkins Sq. Neighbors, 294 F. Supp. 134). In holding that the equal protection clause of the Fourteenth Amendment applies to the tenant selection policy of the landlord, the court stated at page 137: 1‘ The fact that Haven Plaza Apartments has been constructed on a designated urban renewal site, is financed by an FHA-insured mortgage, that the manag: ing corporation, Tompkins Square, is the recipient of certain tax exemptions granted by the City as well as certain rent supplement subsidies and other forms of financial assistance from City, State and Federal authorities (Daño Affid. of April 9, 1968 at 2), and that the daily operations are ultimately supervised by both the New York City Housing and Development Administration and the Federal Housing Administration (hereinafter referred to as the ‘FHA’), pursuant to Tompkins Square’s Disposition Agreement with the City of New York and Regulatory Agreement with the FHA (id. at 3), indicates that there exists sufficient and continuing government participation and involvement in the project so as to bring any discriminatory operational practices within the gambit of constitutional prohibition. ’ ’
See, also, McQueen v. Druker (317 F. Supp. 1122) in which Judge Wyzanski, relying in part upon the Colon case, held that a tenant in a similarly organized project was entitled to due process before the landlord could refuse to renew an expired lease.
I am cognizant of the fact that there was a contrary decision by the Court of Appeals over 20 years ago in Dorsey v. Stuyvesant Town Corp. (299 N. Y. 512). However, the Dorsey case involved a development company organized on a different basis, and is distinguishable from, if not superseded by, the Colon case.
The question then is what the due process clause requires of a quasi-public landlord before it may refuse to renew a lease that has expired.
With respect to public housing authorities, the law in this State is clear. Before the local Housing Authority may terminate the monthly lease of a tenant it finds undesirable, it must give him notice of good cause and a full hearing (9 NYCRR 1627-7.3; Escalera v. New York City Housing Auth., 425 F. 2d 853; Matter of Vinson v. Greenburgh Housing Auth., 29 A D 2d 338; Matter of Williams v. White Plains Housing Auth., 35 A D 2d 965). To summarize the applicable rules of due process enumerated in these cases: the tenant must be notified of the grounds for the proposed action, he must have access to all the informa *106 tion upon which any decision will be based, he must be given the right to confront and cross-examine persons whose statements or testimony form the basis for such action, and he must be afforded the opportunity to present his position bef ore an impartial official.
The problem narrows down to where and how such a hearing shall be afforded the tenants herein. There is no administrative procedure available nor does this court have the power to order administrative hearings like those mandated for the public housing authorities. However, this court can present the tenants with an appropriate forum and constitutional safeguards.
There are a number of eases which hold that a summary proceeding is not the appropriate forum to review a housing authority decision regarding the tenants’ nondesirability or to review its compliance with due process; however, these eases are distinguishable from the case at bar. They all involve public housing authorities whose decisions must be rendered after a due process hearing, reviewable in an article 78 proceeding (New York City Housing Auth. v. Alvarez, 64 Misc 2d 358; Matter of New York City Housing Auth v. Gantt, 57 Misc 2d 447; see Matter of Vinson, supra; Matter of Williams, supra). See, also, Escalera (supra, p. 866) in which the court said, “ Such review commenced by the tenant cannot be a substitute for fair procedures in the decision of the [Housing Authority] in the first instance. ’ ’
As a last point, the landlord has argued that it would be inordinately burdensome and difficult to hold a hearing and have neighbors testify. This is, nevertheless, one of the responsibilities that a public or quasi-public landlord must shoulder. Moreover, this places no greater burden on this landlord than on a private landlord under rent control or under rent stabilization (see Code of the Real Estate Industry Stabilization Association of New York City, Inc., part V).
Therefore, the motion is granted .to the extent of setting the matter down for trial at Trial Term, Part 49 of this court on January 3, 1972, at which time the issue will be whether the tenant has violated a substantial obligation of the tenancy.