Bebtbam Habített, J.
Once again the question is raised whether an ostensible “private” corporation is so saturated with governmental incidents as to be limited in its practices by constitution! due process. Here, the eviction of a tenant from a housing project is disputed.
Park Lake Housing Development Fund Corporation is a nonprofit corporation that has purchased and is rehabilitating and operating certain low-income multiple apartment buildings in Hempstead, New York, under a Federal program set forth in section 236 of the National Housing Act (H. S. Code, tit. 12, § 1715z-l). It has brought summary dispossess proceedings in the District Court of Nassau County against four parents residing as month-to-month tenants in the project, on the grounds that each family is violating a Hempstead Village Ordinance against overcrowding.
No opportunity for a hearing was provided before Park Lake elected to terminate the tenancies and commence the eviction *327 proceedings. In this article 78 CPLR. proceeding, the families challenge the procedures followed as arbitrary and violative of the Fifth Amendment to the United States Constitution.
The Federal section 236 program authorizes certain private entities, such as Park Lake, to obtain FHA-insured mortgages to the extent of 100% of the value of the property up to a certain maximum per unit and then governmental subsidies to reduce interest payments.' The Federal Housing Authority makes periodic paymets to the lending institution on behalf of nonprofit sponsors which effectively reduce interest payable by the sponsor to as low as one per cent, instead of at the current market rate.
By Federal statute, rent supplements are available to tenants whose maximum rent chargeable (25% of income) is below the fair market rental, but not to more than 20% of the families in the project. No tenant may have income above 135% of the prevailing local public housing guidelines. (See U. S. Code, tit. 12, § 17151 et seq; National Housing and Development Law Project, Guide to Federal Housing, Redevelopment and Planning Programs, Part I, § C, pp. 3735-61.)
Significantly, the United States Secretary of Housing and Urban Development oversees each section 236 project, and each nonprofit mortgagor is “ subject to such regulation or supervision as to rents, charges and methods of operation ’ ’ as the Secretary deems necessary to effectuate the act. (Code of Fed. Reg., tit. 24, § 236.10, subd. [a].) Federal guidelines are imposed on rental charges, mortgage eligibility, project facilities, selection of tenants, occupancy requirements, and the form of leases executed by tenants receiving rent supplements. (See Code of Fed. Reg., tit. 24, § 236.1 et seq.)
Accordingly, a nonprofit sponsor such as Park Lake exists only as a creature of governmental policy. In the most practical sense, the Federal Government is providing the housing through a transactional form which involves a ‘1 private nonprofit corporation ’ The sponsor may even obtain local real estate tax abatement.
The United States Supreme Court has laid down the rule that constitutional restrictions apply where the State has sufficiently ‘ ‘ insinuated itself into a position of interdependence ” with an erstwhile ‘ ‘ private project ”. (Burton v. Wilmington Parking Auth., 365 U. S. 715, 725.)
In McQueen v. Druker (438 F. 2d 781) a subsidized project of a “ private ” landlord under section 221 (subd. [d], par. [3] ; U. S. Code, tit. 12, § 17151, subd. [d], par. [3]) (the predecessor of § 236) of the National Housing Act was held to be State *328 action. The court found that, in such a project, government exercises “ significant operational surveillance ” over the function of the landlord, and said (supra, pp. 784-785): “ When a specific governmental function is carried out by heavily subsidized private firms or individuals whose freedom of decision-making has, by contract and the reserved governmental power of continuing oversight, been circumscribed substantially more than that generally accorded an independent contractor, the coloration of state action fairly attaches ”. The entire question of State presence in nominally private entities is discussed in detail in Matter of Ryan v. Hofstra Univ. (67 Misc 2d 651). (See, also, Colon v. Tompkins Sq. Neighbors, 294 F. Supp. 134; R. Burke, I. M. Heyman, Federally Assisted Housing and the Private Sector, 25 Bus. Lawyer 381, 392 [Jan., 1970].)
The same result is required in this case by the New York Court of Appeals in Matter of Fuller v. Urstadt (28 N Y 2d 315). There, the Court of Appeals overturned evictions from a project operated by a limited profit housing company under the so-called Mitchell-Lama Act (Private Housing Finance Law, §§ 10 to 37). The State Division of Housing had leased a number of apartments from the housing company, a ‘ ‘ State-aided but otherwise private project ”, in order to sublease them with rent subsidies to low-income families, which included the litigants. The court held (supra, p. 318) that these families, before eviction, were entitled “to a hearing which need consist of no more than an opportunity to deny or explain ’
Significant to this case, which reversed both the Appellate Division, Second Department, and the Supreme Court at Special Term, is the court’s unequivocal statement in extension of its holding that:1 ‘ Even where direct State operation is not involved but only supportive or interrelated State action, arbitrariness is forbidden. Thus it was held in Burton v. Wilmington Parking Auth. (365 U. S. 715, 725) that where the State ‘ has so far insinuated itself into a position of interdependence ’ with a program or project, the program or project ‘ cannot be considered to have been so “ purely private ” as to fall without the scope of the Fourteenth Amendment. ’ Providing low rental housing for persons with low income is a State concern (see N. Y. Const., art. XVIII; Private Housing Finance Law, §§ 11, 41). The project owner received tax exemption, and its activities were, pursuant to statute, overseen by the State. The conclusion of State involvement is all the greater where the State’s rental, which to begin with was under a State-established ceiling, was decreased by an additional tax exemption because the subleasing program is treated for such purposes as public housing *329 (§ 33, subd. 2 ; § 44-a, subd. 1). Moreover, as noted, the sublease is granted or "withheld by the State, the State sets the petitioners’ rental and makes up the difference in State funds between the petitioners’ rental and the State’s. The ingredients of State action are remarkable and multiple, indeed overwhelming ” (supra, pp. 318-319).
Substantially the same governmental “ ingredients ” are present in Park Lake’s "operation. That the source of involvement is at the Federal rather than State level does not render the involvement any the less governmental. The significant presence of public funds and comprehensive regulation by governmental agencies in the project is the determining factor requiring fundamental fairness to the persons intended to be benefitted.
Therefore, the same procedural safeguards held applicable in Matter of Fuller v. Urstadt (28 N Y 2d 315, supra) apply here with a purely Federal project.
Accordingly, Park Lake may not arbitrarily evict tenants, but instead must abide by procedural rules fair and reasonably appropriate to the occasion. The New York State Court of Appeals, in Matter of Fuller v. Urstadt (supra, p. 318) further wrote: ‘ ‘ Petitioners are entitled to the same treatment as other individuals who are the direct subjects of State action, namely, the assurance, implemented by the right to a hearing which need consist of no more than an opportunity to deny or explain, that the State has not acted arbitrarily or capriciously. The test is the limited one of arbitrariness and does not involve a full evidentiary hearing or the full scope review of administrative quasi-judicial action which must be supported by substantial evidence ”.
Park Lake contends that no hearing procedures are imposed by FHA regulations. Be that as it may, the source of procedural protection from government arbitrariness is the due process requirement of the Fifth Amendment to the United States Constitution which superimposes such requisite procedures regardless of whether they are incorporated specifically in the agency regulations.
Park Lake contends further that it was entitled to rely upon a letter it received from the village which simply listed the names and addresses of five tenants whose apartments were found “in a recent inspection ” to be overcrowded and stated that ‘ ‘ failure to correct these conditions will result in court action ”. The letter did not state in what respect each family was overcrowding nor the information on which the claimed violations were based. It gave no information, such as dates, names of witnesses, or listings or numbers of occupants in each *330 apartment. On the basis of that letter alone, Park Lake sent routine “ Notices Terminating Tenancy ” to each named family and sought their eviction in District Court. The village has apparently not pursued the claimed violations further, perhaps relying on Park Lake’s efforts to remove the families named in the letter.
The village letter does not relieve Park Lake of its obligation to proceed fairly before electing to terminate the tenancies. It is simply a notice of possible violations. On the record it does not, as Park Lake contends, 11 mandate ” the removal of these families. If anything, as an unsworn document lacking the pertinent dates, places and factual statements concerning each family’s alleged overcrowding, the letter heightens the need for an opportunity for the tenants to be heard. The village itself could not effect a removal without some fair process; why then should Park Lake have rights in the village letter which the village itself lacks. The letter itself cannot be used to preclude any inquiry by Park Lake into the truthfulness of its contents.
The giving of reasons for discontinuing a tenancy, required under Matter of Fuller v. Urstadt (28 N Y 2d 315, supra), would afford no protection whatever unless accompanied by at least an opportunity to explain or disprove. Simply sending a cover letter to the tenants with the notice of termination mentioning the village letter, as Park Lake did, is insufficient. It may be that a nonprofit developer under a Federal program is less equipped to hold administrative hearings than a full-fledged public Housing Authority or State agency. (See Holmes v. New York City Housing Auth., 398 F. 2d 262; Escalera v. New York City Housing Auth., 425 F. 2d 853, cert. den. 400 U. S. 853 ; Caulder v. Durham Housing Auth., 433 F. 2d 998, cert. den. 401 U. S. 1003; Williams v. White Plains Housing Auth., 35 A D 2d 965.) But, however informal the procedures ultimately devised by Park Lake may be, there must be some, and they must give adequate protection. Due process is not a mechanical thing; it varies with the context of the happening. The base line is procedure 11 traditionally fair and conscionable in the context taken ’ ’. (See Ryan v. Hofstra Univ., 67 Misc 2d 651, 671; Recent Cases, 21 Buffalo L. Rev. 524, 537 [Winter, 1972].)
The pending District Court eviction proceedings do not, as Park Lake contends, bar the resolution of the issue raised in this proceeding. A summary eviction, being a limited proceeding to determine swiftly the right of possession, is not appropriate to test tenants’ constitutional rights. (Lincoln Sq. Apts. v. Davis, 58 Misc 2d 292, affd. 64 Misc 2d 859; New York City *331 Housing Auth. v. Alvarez, 64 Misc 2d 358; Of. Glover v. Housing Auth. of City of Bessemer, 444 F. 2d 158.)
Where a project, such as Park Lake, so intertwined with government subsidy and regulation, seeks to remove a family from its home and thereby curtails the very public benefit it was intended to provide — decent accommodations for low-income families in a time of great housing shortage — it nullifies its reason for existence. How frustrating it is to the originating national housing policy to permit arbitrary ejectment of whole, families. (See Goldberg v. Kelly, 397 U. S. 254; Matter of Hecht v. Monaghan, 307 N. Y. 461; Tompkins Sq. Neighbors v. Zaragoza, 68 Misc 2d 103.)
Accordingly, the application is granted, annulling the determination by respondent to terminate the petitioners’ tenancies without notice and an opportunity to be heard, and enjoining respondent from seeking to evict petitioners without adopting and complying with procedures consistent with the principles described in this opinion. These include an opportunity to be heard and the giving of reasonable grounds for action. Nothing herein limits the right of Park Lake to evict tenants in procedures meeting such requirements.