Beatrice **ANDERSON** and Barbara Long,
on behalf of themselves and on behalf
of those similarly situated, Plaintiffs,

v.

**L. John DENNY** et al., Defendants.

**Civ. A. No. 73-C-10-C.**

United States District Court,
W. D. Virginia,
Charlottesville Division.

Sept. 24, 1973.

Ronald R. Tweel, Charlottesville-Albemarle Legal Aid Society, Charlottesville, Va., for plaintiffs.

John Dezio, Gilmer & Dezio, Charlottesville, Va., for defendants.

## OPINION

TURK, District Judge.

Since May, 1972, Barbara Long and her family have been tenants at Oak Ridge Garden Apartments in Charlottesvilla, Virginia. On February 20, 1973, Mrs. Long was served with a notice terminating her tenancy as of April 1, 1973. This notice alleged various acts of misconduct on the part of Mrs. Long and her husband. When Mrs. Long did not vacate her apartment, an unlawful detainer warrant was obtained in the General District Court in Charlottesville, but prior to obtaining this warrant, the present action was begun in this court. By agreement of the parties, the eviction proceedings in the state court have been stayed pending the outcome of this action.

Beatrice Anderson and her four children rented an apartment at Oak Ridge Garden from February 3, 1972, pursuant to a month-to-month oral lease. A written notice dated September 29, 1972, was sent to Mrs. Anderson directing her to vacate the apartment within five days because of "gun play that occurred in your apartment." Mrs. Anderson was served with an unlawful detainer warrant subsequent to this notice, and she vacated her apartment on October 7, 1972.

Oak Ridge Gardens is a limited partnership formed in April, 1969, by defendant John Denny as general partner and Rosalind Denny and Raymond V. Long, Jr. as limited partners.[1] This

---

1. As of the date of this suit, Raymond V. Long, Jr. was no longer a limited partner and thus is dismissed as a party.

limited partnership owns Oak Ridge Garden Apartments which it operates through Alcova Management Corporation. It is a multi-family apartment complex of approximately 200 units catering to low and moderate income tenants. It was constructed and financed pursuant to section 236 of the National Housing Act of 1968, 12 U.S.C. § 1715z–1.

■ This case involves the procedural protections to be accorded the tenants of Oak Ridge Gardens before they may be evicted. Plaintiff Long purports to represent the class of tenants currently renting apartments at Oak Ridge Gardens, and plaintiff Anderson purports to represent those tenants who have been "improperly" evicted from Oak Ridge Gardens. It appears that the requirements of a class action as set forth in Rule 23 of the Federal Rules of Civil Procedure are satisfied in the case of Mrs. Long and the sub-class she purports to represent, and accordingly those tenants now residing at Oak Ridge Gardens will be treated as a class for purposes of this suit. In the case of Mrs. Anderson, this court is of the opinion that the requisites of a class action have not been satisfied. The testimony at the hearing in this case as well as the evidence and pleadings indicate that on September 4, 1972, Mrs. Anderson was given an oral five-day notice of termination. This was followed on September 29 with a written notice from an attorney for Oak Ridge Gardens which specified that she was being evicted "because of gun-play that occurred in your apartment." Mrs. Anderson apparently chose not to contest this eviction and left the premises on October 7, 1972. This was ostensibly a voluntary act on her part, and although, as this opinion will make clear, she had certain constitutional rights which limited the defendants' rights to arbitrarily evict her, there was no requirement that she be apprized of those rights or that she challenge her eviction. Mrs. Anderson now asserts that she should be given relief because she was not aware of her rights at the time of her eviction. Aside from the practical difficulty of displacing present tenants in order to return her to her tenancy at Oak Ridge Gardens, this court is of the opinion that her voluntary act in leaving after being notified that she was being evicted because of gun play occurring in her apartment, makes any claim for relief on her part moot. Accordingly, not only would Mrs. Anderson not adequately protect the interests of the class she claims to represent, but there is no basis for relief in her individual case. Thus Mrs. Anderson's claim for relief is denied and the remainder of this opinion will consider the claims of Mrs. Long and the class she represents.

I

■ The substance of Mrs. Long's claim is that before any tenant may be evicted from Oak Ridge Gardens the due process clauses of the Fifth and the Fourteenth Amendments to the United States Constitution require that certain procedural requisites be complied with. The initial question thus posed by this action is whether the Fifth and Fourteenth Amendments are applicable to this case for the due process clauses of those amendments limit the action of "any state" in the case of the Fourteenth Amendment and the state and federal governments in the case of the Fifth Amendment. The defendants have taken the position that what is involved in this case is purely private action which, of course, would not be limited by those amendments. The question is thus whether the state or the federal government, or both, have become so involved in the conduct of this otherwise private enterprise that its actions are also the actions of these governments and performed under their aegis without the private body necessarily becoming either their instrumentality or their agent in a strict sense. Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963), cert. denied, 376 U. S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964). Decision on this question re-

quires consideration of § 236 of the National Housing Act of 1968 as well as the involvement of the state and local governments in the activities of the defendants.

The benefits received from the federal government by qualifying as a § 236 project include reduction in the interest rate paid on the mortgage to one percent per annum, rent supplements for 20% of the tenants, provision for up to 95% of the funds needed during construction by the Federal National Mortgage Association in participation with an originating mortgagee, provision for the purchase of the mortgage by the Federal National Mortgage Association or the Government National Mortgage Association upon completion of construction, guaranteed builders' fees, and certain tax benefits including accelerated depreciation with limited recapture as ordinary income.[2]

Quite understandably such inducements to private entrepreneurs to encourage them to provide housing for low income families result in federal control. The statute pursuant to which Oak Ridge Gardens qualified for federal subsidies provides that the owners "shall operate the project in accordance with such requirements with respect to tenant eligibility and rents as the Secretary may prescribe." 12 U.S.C. § 1715z–1(e). In addition, the Secretary is given the power "to make such rules and regulations, to enter into such agreements, and to adopt such procedures as he may deem necessary or desirable to carry out the provisions of the statute." 12 U.S.C. § 1715z–1(h). Restrictions on the management of § 236 projects are set forth in 24 C.F.R. § 236.1 et seq. The defendants in this case are restricted in the following particulars among others: (1) the amount of rent that may be charged; (2) admission to the project is limited to persons of specified income levels; (3) the landlord cannot discriminate on account of chil-

dren in a family; (4) preference in admission must be given to families displaced by government activities; (5) the landlord cannot convey, transfer or encumber the property; (6) without written approval of the Federal Housing Administration, the landlord cannot convey a beneficial interest in the property or convey a right to manage it or collect its rents nor can he remodel, add to or destroy a portion of the property; (7) the landlord must maintain the mortgaged property in good condition subject to FHA inspection; (8) the owners cannot voluntarily go into bankruptcy; and (9) the owners must furnish monthly occupancy reports and must answer questions relative to income, assets, liabilities, contracts, operation and condition of the property and the status of the mortgage.

State participation in the Oak Ridge Gardens development is also present. On March 3, 1969, the Charlottesville City Council passed a resolution which granted approval for the defendants to participate in the Federal Rent Supplement Program. The stated purpose of this resolution was to enable Oak Ridge Gardens to participate in the rent supplement program as provided in section 101 of the Housing and Urban Development Act of 1965. Even more direct, state involvement in this case flows from the fact that defendants have attempted to evict plaintiff from her tenancy pursuant to state law which permits eviction without just cause upon the giving of proper notice. Va.Code Ann. § 55–222 (1969 Repl.Vol.).

Although the question of exactly what degree of participation by the government in private activity is sufficient to constitute "state action" defies a precise answer, compare Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S. Ct. 856, 6 L.Ed.2d 45 (1961) with Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), this court is of the opinion that the govern-

---

2. Details of the benefits are set forth in Rental and Cooperative Housing for Lower Income Families: Section 236 of the National Housing Act, HUD Program Guide, September, 1971.

ment involvement mentioned above quite clearly brings the actions of defendants within the ambit of "state action." There is ample precedent for such a conclusion from factually similar cases involving housing built under the aegis of federal law. Previous decisions have dealt primarily with housing built under § 221(d)(3) of the Housing Act of 1961, 12 U.S.C. § 1715l. E. g., Joy v. Daniels, 479 F.2d 1236 (4th Cir. 1972); McQueen v. Druker, 317 F.Supp. 1122 (D.Mass.), aff'd in part, 438 F.2d 781 (1st Cir. 1971); McClellan v. University Heights, Inc., 338 F.Supp. 374 (D.R.I.1971); Colon v. Tompkins Square Neighbors, Inc., 294 F.Supp. 134 (S.D.N.Y.1968). But a comparison of § 221(d)(3) of the Housing Act of 1961 with § 236 of the Housing Act of 1968 indicates very little difference in the degree of government involvement in the two programs.[3] The § 236 program involves somewhat more in the way of government subsidies and both programs involve virtually the same government regulations. 24 C.F.R. § 236.1.

In Joy v. Daniels, supra, Judge Craven stated with respect to a suit by a tenant challenging her eviction from a § 221(d)(3) housing project,

"The participation of the federal government in such housing projects is conditioned upon state approval. The state is thus involved for there would otherwise be no federal direct funding through rent subsidies and indirect funding through mortgage benefits. We think that these factors coupled with utilization of state eviction procedure have 'so far insinuated [the state] into a position of interdependence' with the defendant that the challenged activity 'cannot be considered to have been so "purely private" as to fall without the scope of the Fourteenth Amendment.' Burton, 365 U.S. at 725, 81 S.Ct. at 862." 479 F.2d at 1239.

Inasmuch as the case at bar has likewise involved state approval for the purpose of receiving rent subsidies, and the defendants here are also attempting to use state eviction procedures, this court concludes that there is "state action" in the defendants efforts to evict Mrs. Long. Accord, McClellan v. University Heights, Inc., 338 F.Supp. 374 (D.R.I. 1972).

Furthermore, the relationship of defendants to the federal government (operating through the Department of Housing and Urban Development) is one of such intwinement and regulation as to bring defendants' actions within the scope of the Fifth Amendment as it applies to the federal government. In McQueen v. Druker, 317 F.Supp. 1122 (D.Mass.1970), Judge Wyzanski stated with respect to § 221(d)(3) housing,

"With respect to Castle Square, the federal and state governments have elected to place their power, property and privilege behind the landlords' authority over the tenants, and have insinuated themselves into a position of interdependence with the landlords. Whatever may be the situation of landlords of Castle Square with respect to their labor relations or to any immunity from intergovernmental taxation, their action in relation to their tenants cannot be considered to be so private as to fall without the scope of the First, Fifth and Fourteenth Amendments." 317 F.Supp. at 1128.

Courts in at least two cases involving § 236 housing have found sufficient federal involvement to subject the landlord to the requirements of the United States Constitution. Bonner v. Park Lake Development Fund, Inc., 70 Misc.2d 325, 327, 333 N.Y.S.2d 277, 279 (1972); Cordill v. Panos, Civil No. LV–1728 (D.Nev. filed Apr. 3, 1972).

Beyond the mere relationship of Oak Ridge Gardens to the state and federal

3. The § 236 program caters to lower income tenants than does the § 221(d)(3) program and has greater incentives to induce private participation. For example, a § 236 landlord pays only one per cent interest on his project mortgage whereas a § 221(d)(3) landlord has his mortgage cost lowered to only 3 per cent.

governments in the form of benefits and regulations, the fact that defendants in effect perform a government function by helping to implement the congressional policy of providing decent housing to low income families makes their actions subject to constitutional limitations. See Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); Marsh v. Alabama, 326 U.S. 501, 66 S. Ct. 276, 90 L.Ed. 265 (1946); Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L. Ed.2d 659 (1964). Related to the theory that defendants are performing a government function is the idea that defendants have the power to deprive their tenants of government benefits. It is clear that tenants at Oak Ridge Gardens must meet certain income requirements and that they receive a government subsidy amounting to the difference in their rental payments and the market value of comparable housing. Eviction of a tenant obviously results in a deprivation of this benefit which can fairly be described as a necessity. It follows that the defendants, by electing to act as a means of distributing these government subsidies, have made themselves government actors for purposes of the Fifth and Fourteenth Amendments. See Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

## II

■ The conclusion that there is "state action" for purposes of the due process clause of the Fourteenth Amendment and federal involvement sufficient to subject defendants to the Fifth Amendment, makes the question of the jurisdiction of this court a simple matter. In Joy v. Daniels, supra, the court found that in addition to "state action" the facts satisfied the "under color of" clause of 42 U.S.C. § 1983, and jurisdiction was thus satisfied under 28 U.S.C. § 1343(3).[4] The close similarity of *Joy* to the case at bar indicates that this court also has jurisdiction under that statute.

■ An additional basis for jurisdiction in this case is provided by 28 U.S.C. § 1331(a) which gives original jurisdiction to the district courts in "all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States." The requirement that the matter in controversy arise under the Constitution is satisfied by the conclusion that the defendants' actions with respect to the tenants at Oak Ridge Gardens is in effect the action of the state or federal government and thus subject to the proscriptions of the Fifth and Fourteenth Amendments. The requirement that the amount in controversy exceed the sum of $10,000 is also met in this case. Mrs. Long, her husband and two children pay a monthly rental of only $99.00 for their apartment at Oak Ridge Gardens. There is obviously a certain value at stake in this lease which would be lost if plaintiff were evicted. The amount of such loss would exceed $10,000 over the life of Mrs. Long, who is presently only 21 years of age. Additional costs such as moving and storage expenses are also at stake. In Joy v. Daniels, supra, the court recognized the availability of § 1331 jurisdiction in a case such as this when it stated in footnote six,

"Since the pleadings do not raise the issue, we need not decide if there is also 'federal question' jurisdiction on the theory the defendant is an agency of the United States. But we note that if plaintiff's life expectancy is as much as a decade or less the 'bargain'

4. The district court shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

    .     :     .     .

  (3) to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

value of her lease would seem to have a value greater than $10,000." 28 U. S.C. § 1331, 479 F.2d at 1239.

Thus it appears that § 1331 provides an alternative basis for jurisdiction in this case.

### III

■ Having found that this court has jurisdiction and that defendants' actions with respect to their tenants are subject to the due process clauses of the Fifth and Fourteenth Amendments, the next issue is whether the plaintiff has a "property" or "liberty" interest in her tenancy to be protected by those amendments. Again, referring to the opinion of Judge Craven in Joy v. Daniels, supra, the factors referred to in that opinion to support the conclusion that a tenant has a property interest in housing constructed and operated pursuant to section 221(d)(3) of the National Housing Act are equally applicable to a tenant in housing constructed and operated under section 236 of the National Housing Act. The congressional policy of providing "a decent home and suitable living environment for every American family" has also been expressed with respect to § 236 housing. Housing and Urban Development Act of 1968, Pub.L. 90–448, § 2, 82 Stat. 476 (Aug. 1, 1968). The federal prohibition against discrimination under any program receiving federal financial assistance, e. g. 42 U.S.C. § 2000(d), is, of course, also applicable to § 236 housing. FHA regulations governing § 236 projects also imply a right to be free from arbitrary actions by a landlord. E. g., 24 C.F.R. § 236.65(a) (prohibiting discrimination because of children in a family). Finally, Judge Craven in Joy referred to the "custom" of tenants expecting a certain degree of permanency in their tenancies. In the stipulations made part of the record in this case, the parties to this action agreed that "it is the policy of Oak Ridge Gardens to allow their tenants to remain in their apartments as long as they desire so long as they pay their rent and obey the regulations." In

short, the factors referred to in Joy and the other cases involving § 221(d)(3) housing which have led to the conclusion that a tenant has a property right or entitlement to continued occupancy in quasi-public housing are equally applicable to the case at bar. Accordingly, this court concludes that as a matter of substantive federal law the tenants at Oak Ridge Gardens have a property interest in their tenancies and cannot be evicted except for good cause.

■ This substantive right not to be arbitrarily evicted on the mere expiration of a lease, in turn requires that a tenant be afforded the following protections: (1) timely notice specifying the reasons for the eviction; (2) an opportunity to confront and cross-examine adverse witnesses and present his own evidence; (3) the right to retain an attorney; and (4) the right to an impartial decision based solely on the evidence adduced at the hearing. Joy v. Daniels, supra, Caulder v. Durham Housing Authority, 433 F.2d 998 (4th Cir. 1970), cert. denied, 401 U.S. 1003, 91 S.Ct. 1228, 28 L.Ed.2d 539 (1971). See Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L. Ed.2d 556 (1972).

### IV

■ The final issue in this case is that of determining how the tenants' right not to be arbitrarily evicted is to be protected, or otherwise stated, how the requisites of due process are to be satisfied in this case. Under Virginia law, a tenancy from year to year may be terminated by either party giving three months written notice, and in the case of a month to month tenancy either party may give 30 days written notice. Va. Code Ann. § 55–222 (1959 Repl. Vol.). If a landlord believes that the tenant is unlawfully in possession he may file an affidavit to that effect in a court not of record. A summons will then be served on the tenant, and upon being returned, the court will proceed to hear and decide

the case. Va.Code Ann. § 8–791, as amended (Supp.1973). Jurisdiction in such actions is conferred on courts not of record, which in the present case would be the General District Court. Va.Code Ann. § 16.1–77, as amended, (Supp.1973).

Plaintiff takes the position that her substantive right to adequate notice and eviction only for "good cause" would not be protected in such state court proceedings because such proceedings are summary in nature and permit eviction merely upon the giving of requisite notice. Although it is perhaps true that plaintiff could heretofore have been evicted without good cause in an unlawful detailer action in state court, there appears to be no reason why the property rights she has in her tenancy and which have now been confirmed in this decision, cannot be protected in the state courts. The judges having jurisdiction over such cases bring to bear the usual jusicial powers in aid of the jurisdiction conferred upon them. These include the power to punish for contempt, Va.Code Ann. § 16.1–69.24 (Supp. 1973); the power to issue summonses, warrants and subpoenas, Va.Code Ann. § 16.1–69.25 (Supp. 1973); and the power to issue all appropriate orders or writs in aid of jurisdiction, Va.Code Ann. § 16.1–69.27 (Supp. 1973).

But more important than the power of the state judges to protect a tenant's property rights is the command of Article VI· of the United States Constitution which requires that such rights be protected in the state courts. The second clause of that article provides:

> "This Constitution, and the Laws of the United States made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and

the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the contrary notwithstanding."

In Johnson v. Tamsberg, 430 F.2d 1125 (4th Cir. 1970) and Joy v. Daniels, supra, the Fourth Circuit Court of Appeals found that the substantive right of a tenant in quasi-public housing not to be evicted except for good cause would be protected in an eviction proceeding in the South Carolina courts. Plaintiff has sought to distinguish these cases from the case at bar by showing that the South Carolina detainer statute and case law differ from that of Virginia. Although there are undoubtedly differences in the statutory procedures for eviction in the two states, it is significant that both statutes provide for eviction when the term of tenancy has ended. In Johnson v. Tamsberg, supra, at 1127 n. 3, the court quoted from S.C. Code Ann. § 41–101–115 (1962) which provides that a,

> "tenant may be ejected upon the application of the landlord or his agent when (a) such tenant fails or refuses to pay the rent when due or demanded, (b) the term of tenancy or occupancy has ended or (c) the terms or conditions of the lease have been violated."

Despite the fact that this statute apparently allowed a landlord to evict a tenant without cause, the Fourth Circuit found that the state courts would provide a constitutionally adequate means of affording due process of law because the landlord had in fact sought to evict the tenant for cause and had not relied on the mere expiration of the tenancy. 430 F.2d at 1127 n. 3. In the case at bar, the eviction notice sent to Mrs. Long on February 20, 1973 specified five reasons for terminating her lease.[5] The Virgin-·

---

5. The notice sent to plaintiff listed the following reasons for her eviction:

1. On June 29, 1972, you and your wife engaged in noisy behavior in the parking lot, tended to disturb the peace and annoy your neighbors and resulted in Mrs. Long's arrest for assault and battery.

2. Mr. Long's disorderly conduct on July 12, 1972, that resulted in his arrest and conviction of disorderly conduct.

ia statutory procedures for eviction contain no provision that would prevent plaintiff from litigating the factual validity of these reasons,[6] nor does this court have reason to believe that following this decision the defendants will seek to evict their tenants without cause. This court cannot accept plaintiff's invitation to assume that her substantive federal rights will not be protected in the state courts in accordance with Article VI of the United States Constitution. See, McQueen v. Druker, 317 F.Supp. 1122 at 1131 (D.Mass.1970). State courts have been and should continue to be the primary forums in which landlord-tenant disputes are resolved. Respect for the jurisdiction and authority of such courts supports the results in this case.

 On the basis of what has been said herein and the authorities cited therefor, this court holds that plaintiff and the other tenants now residing at Oak Ridge Gardens are entitled to a declaratory judgment that they cannot be evicted from their tenancies until they receive notice alleging good cause, and such allegations are proved in a hearing in the state courts. Defendants will be enjoined from attempting to evict the tenants at Oak Ridge Gardens except for good cause under the procedural and substantive law of Virginia. As for the named plaintiff, Barbara Long, it appears that she has received adequate notice for eviction, but in the writ of detainer that was obtained against her, the reason for eviction was stated as "failure to vacate after due notice." Defendants may proceed with the eviction pursuant to this writ of detainer provided that the factual allegations contained in the notice to plaintiff on February 20, 1973 may be litigated under this writ. Plaintiff has not demonstrated any damages resulting from defendants' actions and the disposition of this case is thus limited to the declaratory and injunctive relief stated above.

---

3. The disturbance of July 25, 1972, that resulted in Mr. Long's arrest for assault and battery.

4. Mrs. Long's shooting of Mr. Long, December 21, 1972, that resulted in her arrest for felonious assault.

5. Continued display of firearms in front of the children in the hallways at Oak Ridge Gardens.

6. Va.Code Ann. § 55–239 (1959 Repl. Vol.) provides,

Proceedings to establish right of reentry, and judgment therefor.—Any person who shall have a right of reentry into lands by reason of any rent issuing thereout being in arrear, or by reason of the breach of any covenant or condition, may serve a declaration in ejectment on the tenant in possession, when there shall be such tenant, or, if the possession be vacant, by affixing the declaration upon the chief door of any messuage, or at any other notorious place on the premises, and such service shall be in lieu of a demand and reentry; and upon proof to the court, by affidavit in case of judgment by default or upon proof on the trial, that the rent claimed was due and no sufficient distress was upon the premises, or that the covenant or condition was broken before the service of the declaration and that the plaintiff had power thereupon to reenter, he shall recover judgment and have execution for such lands.