*559 OPINION OF THE COURT
Marvin E. Segal, J.
FINDINGS OF FACT
The defendant, Mercy Haven Inc., is a nonprofit corporation, presently operating three licensed community residences under contract with the New York State Office of Mental Health. The defendant, Patricia Griffith, is the executive director of Mercy Haven Inc. The plaintiff is a 42-year-old male who has suffered from psychiatric illness since 1969. Between 1969 and 1980, he was hospitalized for psychiatric illness over 20 times. From 1980 until May 1991, the plaintiff was an inpatient at the Pilgrim Psychiatric Center. On or about May 23, 1991, the plaintiff was discharged from Pilgrim Psychiatric Center to live at a community residence operated by Mercy Haven at 2571 Aster Place North in Westbury, New York. He has resided there continuously to date. His present psychiatric diagnosis is chronic paranoid schizophrenia. The plaintiff is currently receiving treatment for his psychiatric illness at Central Nassau Guidance and Counseling Services. He takes an antipsychotic drug, Haldol, as prescribed by his treating psychiatrist, Dr. Gabay. The plaintiff also receives community support services and is entitled to case management services through the Nassau County Department of Mental Health.
The plaintiff’s expenses of $842 per month for room and board at Mercy Haven were initially paid by the Department of Social Services. These expenses are now paid through the plaintiff’s Social Security disability benefits.
On or about August 24, 1992, Mercy Haven gave the plaintiff a 30-day written notice advising him "to find other living arrangements” within 30 days. The plaintiff contends that he will suffer irreparable harm if Mercy Haven is not restrained from utilizing "self-help” and evicting him without resort to legal process. The plaintiff asserts that he has no family he can live with and that he has, to date, been unable to secure "other living arrangements” although he is awaiting admission to an adult home in Long Beach. Based upon the severity of his psychiatric illness, the plaintiff contends that Mercy Haven is obligated to propose and plan an appropriate discharge for him. The plaintiff contends that one proposed plan by Mercy Haven, to release the plaintiff to a Department of Social Services emergency shelter for the homeless, was inap *560 propriate on the grounds (1) that the plaintiff has resources in excess of $2,000 rendering him ineligible for such assistance pursuant to 18 NYCRR part 370, and (2) that such placement would not afford him appropriate and necessary services. A second discharge plan proposed by Mercy Haven to release the plaintiff to a motel in Westbury at a cost of $795 per month rent is apparently beyond plaintiff’s financial resources. The plaintiff claims that Mercy Haven’s proposed discharge plans would leave him homeless.
The plaintiff contends that Mercy Haven’s connections with the State of New York are of such nature that the acts of Mercy Haven constitute State action. As such, plaintiff claims Mercy Haven must afford him due process of law and that due process mandates that an individual be afforded specific protections prior to discharge, and that any discharge determination be appealable through a CPLR article 78 proceeding.
In the alternative, the plaintiff argues that as a long-term resident of Mercy Haven, having resided at said residence for over 18 months, he is a tenant-at-will and as such is entitled to the protections afforded by RPAPL 701 et seq. The plaintiff further contends, if he is not a tenant, he is a licensee, and as such may not be evicted absent a 10-day notice, and a summary proceeding instituted pursuant to RPAPL 713. It is the plaintiff’s contention that he can be evicted only by the Sheriff executing a warrant, after notice and an appropriate court proceeding. The plaintiff seeks a preliminary injunction, restraining the defendants from discharging him from Mercy Haven until final disposition of this proceeding.
The defendants contend (1) that Mercy Haven’s acts are not State action, (2) that there is no landlord-tenant relationship between the parties herein, (3) that Mercy Haven is not an adult home, residence for adults, motel, hotel, rooming house or single-occupancy hotel, but is a "program”; that the plaintiff has persistently and chronically breached the contractual provisions of the program and accordingly must vacate the facility, and (4) that Mercy Haven took all the proper steps to effectuate a "nondisruptive, planned and predictable transfer of plaintiff to an appropriate living circumstance”.
CONCLUSIONS OF LAW
In the early 1970’s New York State began to make the gradual transition toward the establishment of community-based mental health care and services and away from what *561 had historically been a State psychiatric hospital-based service. With the advent of symptom-controlling psychotropic medication, the need for the locked ward asylums of the past were rendered nontherapeutic, cost ineffective and socially unacceptable. In furtherance of this goal, the Commissioner of Mental Health was authorized by the Legislature to establish a continuum of community residential services for the mentally ill. Section 41.44 of the Mental Hygiene Law (Legislative Findings and Intent, L 1984, ch 298, §§ 1, 3 [eff June 27, 1984]) requires that:
"(b) The commissioner shall establish standards for the operation and funding of community residential services, including but not limited to:
"1. criteria for admission to and continued residence in each type of community residence;
"2. periodic evaluation of services provided by community residences;
"3. staffing patterns for each type of community residence; and
"4. guidelines for determining state aid to community residences.”
A community residence is defined by section 1.03 (28) of the Mental Hygiene Law as follows: " 'Community residence’ ” means any facility operated by or subject to licensure by the office of mental health or the office of mental retardation and developmental disabilities which provides a supervised residence or residential respite services for mentally disabled persons and a homelike environment and room, board and responsible supervision for the habilitation or rehabilitation of mentally disabled persons as part of an overall service delivery system”.
Regulations governing community residences have been promulgated at 14 NYCRR part 586. Section 586.1 sets forth the background and intent of the regulations as follows:
"(a) Community residences for the mentally ill are facilities for mentally ill persons who are unable to live independently at a particular time. Community residences are specifically designed and operated to assist mentally ill persons to live as independently as possible through the provision of training and assistance in the skills of daily living, and by serving as an integrating focus for the mentally ill person’s overall rehabilitation * * *
"(c) A community residence must exist in a system of *562 services for its clientele. It cannot be an independently functioning facility without ties to other service providers. The total rehabilitation of mentally ill individuals requires many and diverse services; the community residence has as its part in the process, primarily, the development of residents’ skills in life maintenance such as dining, dressing, money management, time management and use of community resources to enable residents to live as independently as possible while more general social and vocational skills are developed * * *
"(e) * * * the purposes of community residences vary. Some of these are: to provide a semi-independent residence in the community in the transition from institutional to independent living; to provide long-term supervised residence [for] persons whose mental illness is such that independent living is improbable; to provide a 'shelter’ for short periods in order to prevent admission to an institution; or to provide a brief stay substitute home * * *
"(g) While community residences may provide short-term residence, long-term residence and, on occasion, both; in all cases the length of stay extends only until a resident has attained the skills and motivation necessary to function in an available, less restrictive facility or residential setting”.
The administration of a community residence is required by the regulation promulgated at 14 NYCRR 586.6 (j) (2) to adopt written policies for discharge which specify:
"(i) the functional criteria for discharge and the procedures for discharge to both independent living and to less restrictive community residences;
"(ii) the conditions and procedures governing discharge of residents prior to their gaining the ability to live independently;
"(iii) the expected usual term of residence;
"(iv) the conditions of availability of the residence to discharged residents] who may desire to return * * *
"(v) the circumstances under which a resident admitted from another facility will be returned to that facility;
"(vi) the arrangements which will be made for admission of a resident to an appropriate facility if the resident is mentally ill to the degree that he requires inpatient care in accordance with the criteria set forth in the Mental Hygiene Law”.
In addition to the Mental Hygiene Law and the regulations of the Department of Mental Hygiene, community residences, *563 such as Mercy Haven, are required to comply with The New Community Residence Program Model published by the Office of Mental Health, October 3, 1983. Pursuant to this set of guidelines a community residence is responsible for formulating appropriate discharge plans for its residents. "Discharge responsibilities include review, evaluation, appropriate placement, and follow up upon discharge from the community residence. This * * * discharge function is usually assigned to a specific direct care staff, although variations occur within different community residence programs. Qualified professionals should be available on staff or by written agreement with other mental health service providers to provide clinical expertise to insure supervision of all direct care staff responsible for * * * discharge planning * * * Followup staff are responsible for insuring that residents receive the necessary degree of support to facilitate transition between program levels and independent living. This support may vary in degree and intensity according to individual cases and is subject to clinical judgment” (The New Community Residence Program Model, at 29).
The plaintiff herein claims that Mercy Haven failed to comply with the Mental Hygiene Law, and the regulations relevant to discharge in that Mercy Haven’s only discharge plans as described above were both impractical, inappropriate, failed to provide any support services and failed to insure that the plaintiff would continue to receive the community support services to which a mentally ill person is entitled, and which this plaintiff requires to maintain himself outside a State psychiatric facility. Plaintiff asserts that his treating therapist and various staff from Mercy Haven conducted a case conference on September 14, 1992 at Central Nassau Guidance and Counseling Center and proposed a referral for plaintiff to an inpatient substance abuse program with a return to Mercy Haven upon successful completion of the program. Plaintiff contends that Mercy Haven failed to take any steps to implement this referral.
Mercy Haven alleges that it documented 46 instances of substance abuse by the plaintiff between June 8, 1991 and October 8, 1992; that it conducted seven case conferences and unsuccessfully sought housing for the plaintiff through six other facilities, to wit: The Regency Adult Home, The Brighton Adult Home, The Atlantic Adult Home, Transitional Service of Long Island, Central Nassau Guidance and Counseling, and Pilgrim Psychiatric Center, Community Respite Center; that *564 Mercy Haven was unable to place the plaintiff in another facility because of his noncompliance with smoking regulations or his unwillingness to participate in their programs. Mercy Haven contends that pursuant to current New York State Office of Mental Health guidelines for compliance with regulations for community residences, "a resident may be discharged from a facility if he (1) presents a serious and continued threat to the safety of himself and/or others in the program because of violent or dangerous behavior or severe drug or alcohol abuse, (2) presents severe psychiatric problems requiring hospitalization, (3) continually refuses to follow rules and regulations of the program, or (4) presents medical problems which require a level of care other than that available at a residential care center for adults.”
Mercy Haven contends that it vigorously complied with all required discharge proceedings; that the plaintiff was advised of his rights to appeal the discharge determination and to a hearing before the Mercy Haven Admissions and Discharge Committee. Mercy Haven further contends that the determination of its Discharge Committee is not subject to judicial review; that the Legislature has not enacted any legislation providing for judicial review of the discharge determinations of a community residence; that the plaintiff has no substantive or procedural due process right to reside at Mercy Haven; that absent said right plaintiff is not entitled to judicial review of the discharge plan and procedures adopted by Mercy Haven nor is he entitled to any rights as a tenant, or licensee under RPAPL. Mercy Haven asserts that as the plaintiff has failed to establish the likelihood of success on the merits, the preliminary injunction must be denied.
Statutes and regulations governing adult homes (Social Services Law §§ 461-g, 461-h; 18 NYCRR parts 487-489) provide for impartial court intervention prior to actual discharge or termination of a resident. (RPAPL 713-a.) A resident of a facility operated by the Office of Mental Retardation and Developmental Disabilities has the right to appeal a planned discharge through a CPLR article 78 proceeding. (14 NYCRR 633.12.) A resident of a nursing home is statutorily entitled to a hearing before an impartial tribunal prior to any proposed discharge. (42 USC § 1395i-3 [c] [2]; [e] [3]; [f] [3].) Plaintiff contends that a patient facing involuntary discharge from a State hospital is entitled to seek judicial relief preventing the discharge. Plaintiff asserts that the mentally ill, housed in community residences specifically because they are unable to *565 live independently and require a system of rehabilitative services (14 NYCRR 586.1), are entitled to similar due process protections including the judicial review of any proposed involuntary discharge.
Pursuant to its contract with the Office of Mental Health, Mercy Haven has adopted the following program description and special considerations:
"The Mercy Haven residence is intended for many of the same population as had been targeted for the community RCCA Program. The facility houses 12 persons who are 21 years of age or older. Half of the residents will be admitted from the State Psychiatric Centers and/or the on-grounds community residence. The other half will be admitted from the community with preference being given to applicants from the Town of Babylon. Typically, residents are low-functioning with a high degree of psychiatric problems, and thus have difficulty with self-medication, nutrition, personal care, motivation, and independent living skills. No one is admitted who is harmful to her/himself or others and/or has a recent history of violent behavior, who is acutely involved with alcohol or drugs, or who requires intensive medical attention.
"While the goal of the program will be to improve each resident’s competence in basic skills and behavior, with focus on movement to a supportive or independent setting, given the nature of the population it is anticipated this movement will require a lengthy process and so the community residence will be an extended care facility within the community residence. It is our intent to provide on-site services which will support and enhance each resident’s daily functional activity. These services will include: room, board, ADC training, medication management, transportation, admission and discharge planning, money management and follow-up, socialization and supervision. Residents will be encouraged and assisted in making optimum use of community services.”
It is clear from this description that the residents of Mercy Haven are mentally ill as defined by Mental Health Law § 1.03 (20); that they require medication and psychiatric support services and that their ability to live independently is substantially impaired.
Mercy Haven does not contest plaintiff’s contention that he is mentally ill, that he requires medication, psychiatric and other support services. In fact, Mercy Haven advises the court that on October 14, 1992, the plaintiff was involuntarily *566 hospitalized at Pilgrim Psychiatric Center for one week and was diagnosed as being psychotic and inappropriate for a community residence setting. Further, Mercy Haven sets forth in the affidavit of Patricia Griffith that the plaintiff is being discharged because he is a danger to the physical safety of the staff and the other residents. Despite these admissions as to the plaintiff’s current psychiatric condition, Mercy Haven contends that it is entitled to discharge him to a motel in Westbury because he has violated the rules at Mercy Haven. Mercy Haven also contends that this is an appropriate placement because no other placement is available and further contends that its discharge determination is not subject to judicial review.
DECISION OF THE COURT
When the actions of a nonmunicipal entity are "so intertwined with the state” and the State has insinuated itself into a position of interdependence with a private entity, the actions of said entity are deemed State action making them subject to the due process restraints of the Fourteenth Amendment to the United States Constitution. (Clark v Arizona Interscholastic Assn., 695 F2d 1126, 1128, cert denied 464 US 818; US Const 14th Amend; McQueen v Druker, 438 F2d 781; Campbell v Blum, 110 Misc 2d 678, amended on other grounds 91 AD2d 937; Matter of Bonner v Park Lake Hous. Dev. Fund Corp., 70 Misc 2d 325.) However, neither extensive government funding nor regulation necessarily transforms the actions of a private entity into State action. (Blum v Yaretsky, 457 US 991; Spirt v Teachers Ins. & Annuity Assn., 475 F Supp 1298, affd in part, revd in part 691 F2d 1054, cert granted, judgment vacated 463 US 1223; Corrente v St. Joseph’s Hosp. & Health Ctr., 730 F Supp 493.) In the instant action, the court need not determine whether the actions of Mercy Haven constitute State action as the Fourteenth Amendment is applicable only where a movant seeks to redress the denial or termination of a constitutionally protected property or liberty interest. (Board of Regents v Roth, 408 US 564; Schwartz v Mayor’s Comm, on Judiciary, 657 F Supp 29, affd 816 F2d 54; Helping Out People Everywhere v Deich, 155 Misc 2d 707.)
The law is well settled that there is no Federal constitutional right to receive treatment for mental illness at public expense. (Pennhurst State School v Halderman, 451 US 1; *567 Rone v Fireman, 473 F Supp 92; Ellen S. v Rhodes, 507 F Supp 734; Flakes v Percy, 511 F Supp 1325; Eckerhart v Hensley, 475 F Supp 908; Klostermann v Cuomo, 126 Misc 2d 247, affd 91 AD2d 593, revd 61 NY2d 525.) Similarly, there is no State constitutional .right to receive adequate medical treatment. (Klostermann v Cuomo, supra.) Absent denial or termination of a constitutionally protected interest, the plaintiffs contention that the acts of Mercy Haven are State action subject to due process of law is without merit. (See, Blum v Yaretsky, supra.)
The court however rejects Mercy Haven’s contention that because it is a "treatment program” and not a "landlord” it is entitled to utilize self-help in ejecting "undesirables” from the community residence. While the court recognizes that Mercy Haven functions not only to provide shelter, but also to afford therapeutic and other support services, the provision of long-term supervised shelter is an integral and primary function of this community residence. As noted above, the plaintiff herein has been a resident of Mercy Haven for over 18 months. Prior to his admission to Mercy Haven he was an inpatient at a State psychiatric hospital for 10 years. His placement in Mercy Haven was facilitated by the Department of Social Services. (See, Universal Motor Lodges v Seignious, 146 Misc 2d 395.) Based upon the specific facts of this case, the court finds that (1) Mercy Haven contracted with the State to provide mentally ill persons with long-term residence in a supervised community residence, (2) while Mercy Haven provides certain therapeutic services, its primary function is to house the mentally ill outside a hospital setting, (3) the plaintiff who is mentally ill, acquired the status of a tenant-at-will, and (4) the plaintiff may not be removed from his residence at Mercy Haven prior to the commencement of a summary proceeding. (See, Warriner v Y.W.C.A., 137 Misc 2d 1054.) Accordingly, the plaintiff is entitled to a permanent injunction enjoining and prohibiting the defendants from evicting him from Mercy Haven prior to the disposition of a summary proceeding under RPAPL article 7. As defendants have heretofore served a 30-day notice upon the plaintiff, a summary proceeding may be commenced forthwith.
In closing, the court points out the clear and pressing need for legislative action to provide statutory safeguards to insure appropriate discharge planning for the mentally ill. In the instant action, a private community residence seeks to evict a mentally ill person diagnosed as "too mentally ill” to reside in *568 a supervised community setting and to place him in a motel on the grounds that (1) no other placement is available, and (2) the person is a danger to the other residents. What of the danger to the residents of the motel, the community at large and to the plaintiff himself? As set forth at length herein-above, various statutes and regulations afford due process and judicial scrutiny of involuntary discharge from an adult home, a residence operated for the mentally retarded and a nursing home. Similar legislation should be enacted to provide necessary safeguards regulating the discharge procedures employed by community residences for the mentally ill.